In re J.R. CALDWELL, Sr., J.R. Caldwell, Jr. and Mary B. Caldwell, d/b/a Caldwell Dairy Farms, Debtors.

**PIEDMONT FARM CREDIT, ACA, Appellant,**

v.

**G & M MILLING COMPANY, Appellee.**

Bankruptcy Nos. B–91–19004 C–7, 2:92CV00264.

United States District Court, M.D. North Carolina, Greensboro Division.

Oct. 13, 1992.

Thomas William Waldrep, Jr., Bell, Davis & Pitt, P.A., Winston–Salem, N.C. for Piedmont Farm Credit, ACA, appellant.

Randel Andrew Patty, II, Smith Debnam Hibbert & Pahl, Raleigh, N.C., for G & M Milling Company, appellee.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This bankruptcy appeal raises four issues regarding 11 U.S.C. Section 506(c). The first issue is whether administrative claimants have standing to bring a claim under Section 506(c). The second issue is whether recovery directly from a secured creditor, as opposed to the secured creditor's collateral, is proper. Third, this court is asked to decide whether the Bankruptcy Court clearly erred in concluding that the costs incurred by Appellee were "reasonable, necessary," and provided a "benefit" to the Appellant. The fourth issue is whether the Bankruptcy Court clearly erred in finding that Appellant implicitly consented to be liable for the costs incurred by Appellee.

This court finds the standing issue to be dispositive of the matter, concluding that an administrative claimant does not have standing to bring a claim under Section 506(c). Hence, this court reverses the Bankruptcy Court decision.

## I. FACTS AND PROCEDURAL HISTORY

Since this court does not need to consider the questions of fact raised in this appeal, only a brief review of the facts and procedural history is necessary. On or about August 3, 1990, the above-captioned Debtors filed for bankruptcy protection under Chapter 12 of Title 11, United States Code. The Debtors' business was the operation of a dairy farm and they continued to operate as debtors-in-possession after the filing. Piedmont Farm Credit, ACA ("PACA") is a secured creditor of the Debtors. PACA collateral included the Debtors' herd of dairy cattle.

G & M Milling Company ("G & M") was the Debtors' sole supplier of feed for the dairy herd throughout the bankruptcy proceedings. In 1991, G & M supplied some of the feed to the Debtors on credit. G & M is, therefore, an administrative creditor of the Debtors. Invoices from approximately March 18 through April 9, 1991, totalling $25,030.25 were not paid. On July 1, 1992, G & M moved for an order directing PACA to pay them $25,030.25 as the reasonable and necessary costs of preserving PACA's collateral. This motion was granted by the Bankruptcy Court.

## II. DISCUSSION

### A. Standing to Surcharge Under Section 506(c)

■ The first issue on appeal is whether an administrative claimant has standing to bring a claim under Section 506(c). This issue is one of statutory interpretation, which is a question of law for this court to review *de novo*. Fed.R.Bankr.P. 8013.

The starting point in statutory analysis is, of course, the language of the statute itself. *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 300, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989). Section 506(c) provides that:

> (c) The *trustee* may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(Emphasis added.) The statute is silent as to whether any other entity may proceed under this section. This court concludes that the express language is clear and unambiguous—that "trustee" does in fact mean "trustee." [1]

This conclusion is bolstered by the fact that throughout the Bankruptcy Code, Congress has shown its ability to expand or contract standing as it deems appropriate.[2] For example, Section 343 expands standing to "[c]reditors, any indenture trustee, or any trustee or examiner." *See also*, Section 727(c) ("[t]he trustee, a creditor, or the United States trustee" may object to the granting of a discharge); Section 1105 ("a party in interest or the United States trustee" may request the court to terminate the trustee's appointment); Section 1224 ("[a] party in interest, the trustee, or the United States trustee" may object to the confirmation of a Chapter 12 plan). Conversely, Section 522(b) limits standing only to the "an individual debtor." *See also* Section 365(a) (only the "trustee" may assume or reject an executory contract); Sections 544–549 (only the "trustee" may exercise the avoiding powers); Section 702 (only a "creditor" may vote for a candidate for trustee); Section 722 (only an "individual debtor" may redeem certain property). Thus, this court decides that the plain language of Section 506(c) disallows standing to a creditor like G & M.

The only time the plain language of a statute is not conclusive is in the "rare cases [where] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). However, this court cannot find any indication that limiting standing to a trustee is inconsistent with congressional intent. The legislative history of Section 506(c) states that:

> Any time the *trustee or debtor in possession* expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, *the trustee*

---

1. Although the express language of Section 506(c) only mentions the trustee, this court notes that a debtor in possession is also permitted to surcharge a secured creditor's collateral. *See* 11 U.S.C. § 1107(a) which gives the debtor in possession the same powers as the trustee. Hereinafter, whenever "trustee" is referred to, it is intended to include a Chapter 11 debtor in possession.

2. Justice Scalia in a concurring opinion in *Patterson v. Shumate,* states that the use of similar phrases in other provisions of the Bankruptcy Code is "highly relevant." —— U.S. ——, ——, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992).

*or debtor in possession* is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.

124 CONG.REC. H11,095 (daily ed. Sept. 28, 1978); *reprinted in* U.S.C.C.A.N. 5787 (statement of Rep. Edwards) (emphasis added); *cited in In re Great Northern Forest Products, Inc.* 135 B.R. 46, 65–66 (Bankr.W.D.Mich.1991). Thus, the legislative history of Section 506(c) is also plain, clear, and unambiguous. The legislative history refers to the trustee or debtor in possession. There is no reference whatsoever to allowing a third party to attempt to surcharge a secured creditor's collateral.

This court is cognizant that a split of authority exists on this issue.[3] This court is also aware that its determination in this case is in conflict with the law expressed by the four circuit courts addressing the issue. *See In re Palomar Truck Corp.*, 951 F.2d 229, 230–32 (9th Cir.1991); *In re Pargue Forestal, Inc.*, 949 F.2d 504, 511–12 (1st Cir.1991); *In re Delta Towers Ltd.*, 924 F.2d 74, 76–77 (5th Cir.1991); *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 93–94 (3rd Cir.1986). However, this court finds the analysis contained in the contrary cases, such as *Great Northern Forest Products*, 135 B.R. at 62–69, to be more comprehensive and persuasive. The circuit court cases fail to recognize the distinction between derivative and independent standing and, most importantly, do not analyze the language of the statute. *Id.* at 67–69.

■ Apparently, the reason that some courts have ignored the language of Section 506(c) is because those courts believe that not allowing standing to third parties will produce inequitable results. However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). As the Supreme Court has emphasized, when the language of a statute is clear the court's sole function is simply to enforce the statute as written. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

Furthermore, in the case at bar the equities of the case do not strongly favor either party. Each party could have done more to protect its own interests. PACA could have more clearly expressed its intent, if such intent actually existed, that it did not want the dairy cows fed with the expensive feed. On the other hand, G & M could have moved to be a secured creditor under Section 364, or it could have chosen not to extend credit to the Debtors at all. Hence, neither party appears to be in a position to claim unfair treatment regardless of the disposition of this case. Also, even if there is unfair enrichment to PACA, presumably G & M could directly address this issue in a claim for unjust enrichment under state law.

In summary, Section 506(c) and its legislative history are clear, plain, and unambiguous. Both refer only to a trustee as having standing. Neither the statute nor the legislative history refers to any other entity. As mandated by the Supreme Court, if a statute is clear, the courts must enforce it as written. *Ron Pair Enterprises*, 489 U.S. at 241, 109 S.Ct. at 1030. To do anything else would usurp the legislature's power and expand the judicial role beyond its proper scope. Of course, Congress may decide to allow standing for other entities, but it has not done so yet. Therefore, this court concludes that G & M does not have independent standing to surcharge PACA's collateral.

### B. Other Issues on Appeal

Having concluded that G & M has no standing under Section 506(c), this court declines to address the other three issues raised on appeal. This court notes only that serious issues are raised as to each of the remaining three issues and emphasizes

---

**3.** *See In re Great Northern Forest Products, Inc.*, 135 B.R. 46, 62–63 (W.D.Mich.1991) for a list of numerous cases on both sides of the issue).

that it has made no decisions on these questions.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

## ORDER

For the reasons set forth in the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that the order of the Bankruptcy Court dated March 19, 1992, granting recovery for G & M Milling Company against Piedmont Farm Credit, ACA, be and the same is hereby vacated and this matter is returned to the Bankruptcy Court for entry of an order in accordance with this order and memorandum opinion.