In re Monty P. McCLELLAN, et al., Debtors.

Bankruptcy No. 184–00271.

United States Bankruptcy Court, C.D. Illinois.

March 26, 1993.

Robert M. Musselman, Richard D. Shepherd, Charlottesville, VA, for debtors.

Richard L. Whitman, Sr., Stansell, Whitman, Hultgren & Baber, Monmouth, IL, for National Bank of Monmouth.

Reynolds M. Everett, Jr., Everett & Luymes, P.C., Galva, IL, for trustee.

### OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Monty P. McClellan, (Debtor) is a doctor. Prior to his bankruptcy filing he practiced medicine through a professional corporation, M & S Medical Center S.C. (M & S), which established ERISA qualified profit-sharing and pension plans (PLANS). Also prior to his bankruptcy filing the National Bank of Monmouth (BANK), on February 9, 1984, took a judgment against him for $150,145.53. Shortly thereafter, on February 14, 1984, both the Debtor and M & S filed Chapter 11 bankruptcy cases. The two cases were consolidated and a Trustee was appointed.

On October 18, 1984, pursuant to § 362 of the Bankruptcy Code, 11 U.S.C. § 362, the Trustee filed a complaint for turnover against B.C. Christopher Securities Co. (CHRISTOPHER) to recover assets of the PLANS being held by CHRISTOPHER. On December 7, 1984, the predecessor to the current judge of this Court signed an order directing CHRISTOPHER to turn the assets over to the Trustee, specifically, cash in the amount of $112,722.90 plus interest and 623,840 shares of Multinational Industries Corp. Subsequently the shares were liquidated, other participants in the PLANS were paid their interests, and the Trustee placed the balance of $81,648.60, attributable to the Debtor, in the Trustee's bank account, commingling it with cash from the liquidation of other assets of the bankruptcy estate.

On January 30, 1985, the consolidated Chapter 11 cases were converted to a Chapter 7 bankruptcy case. On July 31, 1987, the current judge of this Court entered an order denying the Debtor a discharge on the grounds that under § 727(a)(4) the Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, under § 727(a)(2), the Debtor with intent to hinder, delay or defraud a creditor or an officer of the estate, transferred, removed or concealed property of the Debtor, and under § 727(a)(5) the Debtor had failed to explain a loss of assets. 11 U.S.C. § 727. On May 6, 1987, the Debtor was indicted and was subsequently convicted in the United States District Court of two counts of bankruptcy fraud, one count of mail fraud, and two counts of making false statements to a federally insured bank, in violation of 18 U.S.C. ¶¶ 152, 1341, and 1014. *See United States v. McClellan*, 868 F.2d 210 (7th Cir. 1989).

On June 15, 1992, the United States Supreme Court decided the case of *Patterson v. Shumate*, — U.S. —, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), holding that ERISA-qualified plans were not property of

a bankrupt's estate. Based on *Patterson v. Shumate,* on August 7, 1992, approximately eight years after the PLANS' assets were turned over to the Trustee, the Debtor filed a motion for the distribution of exempt property, seeking to recover the $81,648.60 being held by the Trustee. Shortly thereafter the BANK filed a state garnishment summons against the Trustee also seeking to recover the $81,648.60.

A hearing was held on the Debtor's motion for distribution. The theories of the Debtor, the Trustee, and the BANK are as follows. As between the Debtor and the Trustee, the Debtor's initial theory is that under the holding in *Patterson v. Shumate,* the $81,648.60 being held by the Trustee is not property of the estate and should be turned over to him. The Trustee counters that at the time that CHRISTOPHER turned over the PLANS' assets to the Trustee, the holding of *Patterson v. Shumate* was not the law of the Seventh Circuit and that a valid turnover order was entered, which is the law of the case. The Debtor responds by arguing that the Court's previous order of December 7, 1984, merely ordered CHRISTOPHER to turn possession of the assets to the Trustee and did not find that they were property of the estate. He also argues that he was not a party to that turnover proceeding and is not bound by it, and the law of the case doctrine should not be construed to prevent this Court from correcting an erroneous decision in light of *Patterson v. Shumate.*

The Trustee further responds with two theories. First, a criminal restitution ordered by the district court as part of the criminal proceeding against the Debtor prevents the Debtor from recovering the $81,648.60. Second, by waiting eight years to recover the funds, the Debtor is barred by laches. The Debtor then counters by argu-

ing first, the Trustee has no standing to present any argument as to the rule of *Patterson v. Shumate;* second, criminal restitution has no bearing on his claim, and the laches argument is ineffective as there is no showing of inexcusable delay or demonstrated prejudice caused by the Debtor's claim.

Not surprisingly, the BANK agrees with the Debtor that the $81,648.60 is not part of the bankruptcy estate, but goes on to claim those funds pursuant to the state garnishment proceeding on the following theories. First, the Debtor failed to claim them as exempt, so they are not exempt. Second, even if they had been claimed as exempt, the Debtor could not claim them as (a) he is barred from claiming exempt assets as his discharge was denied under Bankruptcy Code § 727(a)(5) for failure to satisfactorily explain the disappearance of estate property, a jade statue valued at $90,000.00, and, (b) under the Illinois Exemption Statute in force at the time, an exemption could be claimed only if the funds were "necessary for the support of the debtor and any dependent of the debtor", which they weren't.[1] As to the BANK's claim the Debtor asserts that under ERISA and the Internal Revenue Code and Regulations, qualified ERISA plans must be free of creditor claims, and that the BANK's judgment should be avoided as a preference. As to the first of the Debtor's positions, the BANK argues the protection of the anti-assignment provision of ERISA and the Internal Revenue Code and Regulations was lost when the assets were withdrawn from the CHRISTOPHER account and delivered to the Trustee.

 The Debtor's belated attempt to claim the $81,648.60 based on *Patterson v. Shumate* is flawed as it incorrectly as-

---

1. The Illinois Exemption Statute in force at the time provided as follows:

§ 12–1001. Personal property exempt. The following personal property, owned by the debtor, is exempt from judgment, attachment or distress for rent:

. . . .

(g) The debtor's right to receive:

. . . .

(5) A payment under any pension plans or contracts, to the extent necessary for the support of the debtor and any dependent of the debtor, unless

(A) such payment is on account of age or length of service; and

(B) such plan or contract does not qualify under Sections 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code;

Ill.Rev.Stat. ch. 110, para. 12–1001 (1983).

sumes that *Patterson v. Shumate* is controlling when it is not because of the presence of one very important fact not found in *Patterson v. Shumate*. In the Debtor's case, the Trustee obtained the PLANS' assets through the Debtor's right to control the PLANS, not through the Debtor's beneficial interests in the PLANS upon retirement. It is the right of control, including the right of termination, which is the appropriate focus under § 541, not the spendthrift provisions of the PLANS.

■ Prior to his bankruptcy filing the Debtor was conducting his medical practice through M & S. It was the Debtor, through M & S, which created and controlled the PLANS, including the right to terminate them. At this point in time the Debtor, through M & S, as a business decision, could have terminated the PLANS. After the Debtor and M & S filed their Chapter 11 cases, these rights passed to the respective bankruptcy estates. Subsequently, when the trustee was appointed, the Trustee was given a broad range of powers. As stated by the court in *In re Afco Development Corp.*, 65 B.R. 781 (Bkrtcy.D.Utah 1986):

> A trustee is most often appointed in Chapter 11 where there has been fraud, dishonesty, incompetence or gross mismanagement by the current management of the debtor-in-possession. (Citations omitted.) The powers and duties of a Chapter 11 trustee are extensive. *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, [352,] 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985).
>
> In reorganization cases, the trustee's duties and powers give him a presence and a role to play in shaping the entire reorganization process. It is this role which involves experience, discretion, judgment, diplomacy, and creativity which makes the chapter 11 trustee's position substantially different from that of a chapter 7 trustee.
>
> In addition to the orthodox duties and powers to identify, locate, and possess property of the estate and the powers to compel turnover of such property, the powers to use, sell or lease property, and the avoiding powers, the chapter 11 trustee has the power to formulate and propose the plan of reorganization and the disclosure statement and in connection therewith, the obligation to negotiate with the creditors' committee relative to such plan.

COLLIER HANDBOOK FOR TRUSTEES AND DEBTORS IN POSSESSION, *supra* ¶ 16.01, at 16.1.

Included in those powers was the right to control the PLANS, including the right of termination. The trustee had the authority to terminate the PLANS and take possession of the PLANS' assets from CHRISTOPHER. The Trustee exercised that authority.

The Trustee's actions in that regard are totally consistent with the Debtor's proposed plans and actions which was to liquidate and start over. After the filing of the Chapter 11 cases, but prior to the appointment of a trustee, the Debtor planned to start a new career in Utah as an emergency room physician and had arranged for the sale of M & S's assets. On May 30, 1984, that sale was approved by the predecessor to the current judge of this Court. Thus at this stage the PLANS existed for a non-operating, soon to be defunct medical corporation. When the trustee was appointed five days later, on June 4, 1984, the logical step on her part was to continue the liquidation, terminate the PLANS, seek the turnover of the PLANS' assets, make distribution to the other participants, and hold the Debtor's interest in the PLANS' assets as an asset of the estate.

The Debtor's reliance on *Patterson v. Shumate* is misplaced as the facts and the issue presented in this case are totally different from the facts and issue in *Patterson v. Shumate*. In *Patterson v. Shumate*, the debtor was an employee and was participating in an employer established and controlled plan. The debtor could not control the plan and had no right to terminate the plan and receive a distribution. The debtor's only interest was a right to payment upon retirement. The issue was whether that right was a part of his Chap-

ter 7 bankruptcy estate. The Supreme Court held it was not.

■ The Debtor also attacks the Trustee's right to the $81,648.60 on the grounds that he was not a party to the turnover proceedings and had no opportunity to protect his interest in the funds. The answer to the first of these two grounds is simply that he was not a required party. The turnover was brought pursuant to § 542 of the Bankruptcy Code, 11 U.S.C. § 542, which requires an entity in possession, custody or control of property a trustee may use, sell or lease under § 363, to deliver such property to the trustee. In this case the Trustee had the right to control the PLANS, but she was not in physical possession of the PLANS' assets. It follows that any action for turnover of possession of the PLANS' assets would be filed against the entity in possession. That entity was CHRISTOPHER. As the Debtor was not in possession of the PLANS' assets, he was not a necessary party.

The answer to the second of the two grounds is that the Debtor did in fact recognize the PLANS were part of the bankruptcy estate and knew the Trustee was acting to terminate the PLANS and obtain the PLANS' assets, and given the state of the law at the time, concluded there was no way to exclude the $81,648.60 from the bankruptcy estate or claim it as exempt.

■ In this regard the first thing that is important to note is that the Debtor listed the PLANS as assets of the bankruptcy estate. Next it is important to note that he did not claim his interest in the PLANS as exempt. He did not do so for a very good reason. Given his age, 44, and his earning capacity, under the state statute in force at the time, the funds were not exempt as "reasonably necessary for his support". It is also important to note that it was the Debtor, and not the Trustee, who initiated a liquidation and arranged the sale of the assets of M & S, leaving only a non-operating, soon to be defunct corporation,

with active pension and profit sharing plans. Surely, had a trustee not been appointed, the Debtor's next step would have been to terminate the PLANS. Furthermore, the Debtor was clearly aware that the Trustee was liquidating all assets of the estate. This is evident from the fact that on November 14, 1984, he filed an objection to the Trustee's sale of certain real estate, stating:

> Insofar as material in view of the Court's denial of the Debtors' previous motion regarding the Trustee's proposed sales of property, the Debtors would object to the Trustee's continuing practice of liquidating this Chapter 11 estate without providing a [disclosure statement and plan.]

The Trustee's turnover complaint had been filed as an adversary proceeding approximately one month earlier on October 18, 1984, and the turnover order was entered three weeks after the objection, on December 7, 1984, with a copy of that order being placed in the main bankruptcy case file. Finally, it is important to note what occurred when the consolidated Chapter 11 case was converted to a Chapter 7 case on January 30, 1985. After the conversion, in the process of filing his schedules the Debtor attached the Trustee's final report for the Chapter 11 case which disclosed the liquidation of the PLANS and again asserted the same exemptions he asserted in the Chapter 11 case, which did not, as previously noted, include an exemption for the PLANS.

This Court does not believe that the Debtor did not know about the Trustee's actions. To the contrary, this Court concludes he was following the Trustee's actions in great detail. This conclusion is supported by the Debtor's attorney's time records which indicate that some of the assets being held by CHRISTOPHER were of interest to the Debtor.[2]

The Debtor knew what was occurring, and given the state of the law at the time,

---

2. Those time records reveal the following entry: 11/28 RDS Letter to Gerald McBeth re: Vincent Lossino; check for any address info re: Multinational for him. (File # 4 April 1, 1985)

It was shares of Multinational Industries Corp. that were liquidated by CHRISTOPHER with the proceeds turned over to the Trustee.

there was no basis for him to claim the funds were excluded from the estate or exempt. In *In the Matter of Kochell,* 732 F.2d 564 (7th Cir.1984), decided in April, 1984, the court held that a 44-year old doctor could not exempt pension funds under the federal statute as "reasonably necessary for his support." *In re Graham,* 726 F.2d 1268 (8th Cir.1984), decided in January, 1984, reached the same result involving another doctor and his professional corporation, holding that the funds were part of the bankruptcy estate and were not exempt.

Thus, at the time, all was done properly and as could be expected. Eight years later, *Patterson v. Shumate* is decided and the Debtor now asserts he is entitled to the funds because they were never a part of the bankruptcy estate. It is not beyond the realm of possibility the Debtor is motivated by a hope the passage of time and a change in Judge, has so obfuscated what occurred in his bankruptcy and the turnover proceeding that his claim would be given serious consideration as something other than a belated attempt for a bite of the apple. But the current judge of this Court, after reviewing the whole case file and the turnover proceeding, and being familiar with the bankruptcy since 1985, is convinced the Debtor's bankruptcy proceeding was a long and difficult one, where the Debtor took every step to protect his interests, knew about the PLANS and the Trustee's action in relation to them, and decided not to pursue his claim.

■ But there is yet another reason why the rule of *Patterson v. Shumate* does not apply to this case. As a general rule, judicial precedents generally apply not only prospectively but to all cases pending at the time they are decided. *I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.,* 825 F.2d 415 (D.C. 1987). As long as a case is *sub judice,* a federal court must apply a new interpretation of the law to the issues in the case. *Matter of Martin,* 92 B.R. 364 (Bkrtcy. N.D.Ind.1988). However, in this case, once the Chapter 11 Trustee terminated the pension and profit sharing plans and distribut-ed the funds the issue as to whether the Debtor's interest in a pension fund is excluded from property of the estate was no longer *sub judice.*

In *Matter of Martin, supra,* the issue was whether the Supreme Court decision in *United Savings Assn. of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), should be applied retroactively to relieve the debtors from a lost economic opportunity compensation award previously made by the court. In holding that the debtors were entitled only to prospective relief, the court stated:

> By failing to timely appeal the July 8, 1987 order, the debtors failed to preserve their right to appeal the actual award to the FLB of lost economic opportunity compensation. Had they done so, retroactive application of the *Timbers* decision may have been available.
>
> Merely because the Supreme Court has settled a conflict among the circuit courts on the application of 11 U.S.C. Section 362(d)(1) does not mean that the debtors are automatically entitled to retroactive relief from previous *American Mariner*-type orders of lost economic opportunity compensation, absent a properly preserved appeal of the order granting the compensation. The debtors' attempt to bootstrap their appeal of this court's November 23, 1987 order onto the *American Mariner*-type award of compensation ordered by this court on July 8, 1987, must fail as untimely filed.

It is clear from what occurred in this case that the issue of whether the funds were property of the Debtor's bankruptcy estate was finally decided. That the Trustee still has part of the funds on hand eight long years later does not undermine that determination. *Patterson v. Shumate* has no application here.

For these reasons, the Debtor's motion for distribution is denied. There is no reason to rule on the other issues raised by the parties.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to

Rule 7052 of the Rules of Bankruptcy Procedure.