**In re Monty P. McCLELLAN, et al., Debtors.**

**NATIONAL BANK OF MONMOUTH**

**v.**

**Marsha FESLER, Trustee, and Monty P. McClellan.**

**Nos. 93–4041, 93–4055.**

United States District Court, C.D. Illinois.

Dec. 30, 1993.

Richard L. Whitman, Monmouth, IL, for Nat. Bank of Monmouth.

Reynolds M. Everett, Jr., Galva, IL, for trustee.

Robert M. Musselman, Charlottesville, VA, for McClellan.

### ORDER

MIHM, Chief Judge.

Pending before the Court is an appeal filed by Appellants Monty P. McClellan and the National Bank of Monmouth [Bank] from a final decision of the bankruptcy court. 152 B.R. 252. For the reasons set forth below, the decision is affirmed.

The Debtor, Monty P. McClellan, is a doctor who, prior to filing bankruptcy, practiced medicine at M & S Medical Center S.C., [M & S], a professional corporation. M & S established the M & S Medical Center Profit Sharing Plan and the M & S Pension Plan [Plans]. The Plans were ERISA governed deferred compensation plans.

On February 9, 1984, prior to the filing of bankruptcy, the Bank took a judgment against McClellan for $150,145.53 in Warren County, Illinois. On February 14, 1984, both McClellan and M & S filed for Chapter 11 bankruptcy. The cases were later consolidated, and a Trustee was appointed, Appellee Marsha K. Newman.

On the date the bankruptcies were filed, McClellan had a vested interest in the Plans as a beneficiary. At that time, all the Plans' funds were held by B.C. Christopher Securities. On October 14, 1984, the Trustee filed a complaint for turnover against Christopher Securities to recover the Plans' assets pursuant to § 362. The only parties to the turnover proceeding were the Trustee and Chris-topher Securities. On December 7, 1984, the bankruptcy court signed an order directing Christopher Securities to turn over the Plans' assets to the Trustee. The assets turned over comprised $112,722.90 in cash plus interest and 623,840 shares of Multinational Industries Corporation stock.

The Trustee subsequently liquidated the shares in Multinational Industries and distributed the Plans' assets to the beneficiaries, excluding McClellan. The Trustee deposited the equivalent of McClellan's interest in the Plans, $81,648.60, in the Trustee's general bank account, co-mingling it with the cash acquired from the liquidation of other assets of the bankruptcy estate.

On January 30, 1985, the consolidated Chapter 11 bankruptcy cases were converted to a Chapter 7 bankruptcy. On July 31, 1987, the bankruptcy court entered an order denying McClellan a discharge based on § 727(a)(4) (knowingly and fraudulently made false oath or account), § 727(a)(2) (intent to hinder, delay, or defraud a creditor or officer of the estate, transferred, removed, or concealed property), and § 727(a)(5) (failing to explain a loss of assets). On May 6, 1987, McClellan was indicted, and subsequently convicted, on two counts of bankruptcy fraud, one count of mail fraud, and two counts of making false statements to a federally insured bank in violation of 18 U.S.C. §§ 152, 1341, and 1014. *See United States v. McClellan*, 868 F.2d 210 (7th Cir.1989).

On August 7, 1992, following a Supreme Court decision excluding a debtor's interest in an ERISA plan from the bankruptcy estate, McClellan filed a motion for the distribution of exempt property, seeking to recover the $81,648.60 from the Trustee. *Patterson v. Shumate*, ____ U.S. ____, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (finding that the "applicable non-bankruptcy law" language of § 541(c)(2) encompassed ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1)). On August 22, 1992, the Bank served a Non-wage Garnishment Summons on the Trustee for the turnover of all the funds in the Trustee's possession belonging to McClellan.

A hearing was held on McClellan's Motion for Distribution. The parties stipulated that

the matter did not involve a question of "exemption" pursuant to § 522. On March 26, 1993, the bankruptcy court (The Honorable William V. Altenberger) held that the Plans' funds constituted property of the bankruptcy estate and denied McClellan's Motion for Distribution. The effect of this holding mooted the Bank's Motion for turnover of the funds pursuant to the garnishment summons.

McClellan and the Bank each timely appealed the bankruptcy court's decision to this Court pursuant to 28 U.S.C. § 158(a), (b)(1). This Court consolidated the appeals, and on November 23, 1993, oral arguments were heard. The following is the Court's analysis and decision in this matter.

## DISCUSSION

The standard of review of a bankruptcy court ruling is governed by Bankruptcy Court Rule 8013, which states:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

11 U.S.C. Rule 8013.

The Seventh Circuit in *In re Boomgarden,* 780 F.2d 657, 660 (7th Cir.1985), stated: "[W]e must accept the bankruptcy court's findings of fact unless they are clearly erroneous.... We can, however, apply *de novo* review to conclusions of law of any lower court."

## ANALYSIS

The first issue for the Court is whether the property in question constitutes property of the bankruptcy estate.

■ The property in question in this case is an amount of cash equaling the amount of McClellan's vested interest in the Plans at the time of filing bankruptcy in 1984. Only estate property comes under the control of the bankruptcy court. In determining what constitutes property of the estate, the preliminary question is whether the debtor has legal or equitable interest in the property on the date the bankruptcy petition is filed. 11 U.S.C. § 541(a)(1); *In re Goff,* 706 F.2d 574, 578 n. 10 (5th Cir.1983); *In re Ayscue,* 123 B.R. 28 (Bankr.E.D.Va.1990). Once the debtor's legal or equitable interest in the property is established, bankruptcy law governs whether that interest constitutes property of the estate. *Goff,* 706 F.2d at 578–79. The parties to this action do not dispute McClellan's legal and equitable interest in the property in question here at the time the petition was filed.

■ The Trustee here acquired possession of the Plans' funds through a turnover proceeding. The controlling question in a turnover proceeding is whether the property encompasses estate property. A trustee carries the initial burden of proving by clear and convincing evidence that the property at issue is part of the property of the bankruptcy estate. *Yaquinto v. Greer,* 81 B.R. 870, 878 (Bankr.N.D.Tex.1988), *citing, In re Williams,* 61 B.R. 567, 570 (Bankr.N.D.Tex. 1986); *see also, In re Allegheny Label Inc.,* 128 B.R. 947 (Bankr.W.D.Pa.1991). Pursuant to bankruptcy law, the Trustee must show that the Trustee has authority to use, sell, or lease the property or that the property would go to the debtor as exempt. 11 U.S.C. § 542(a); *In re Ayscue,* 123 B.R. at 28. A trustee's rights to "property of the estate" arise from the rights the debtor had prior to filing the petition. *In re Thompson,* 103 B.R. 205 (Bankr.W.D.Mo.1989).

■ A turnover proceeding is a "core proceeding" falling under the jurisdiction of the bankruptcy court. 28 U.S.C. § 157(b)(2)(E); *Yaquinto v. Greer,* 81 B.R. at 877. For a turnover to be ordered and for the Trustee to take possession, the property sought to be recovered must be established as estate property. Before the bankruptcy court could have properly entered a turnover order, the funds in this case must have necessarily been adjudicated as property the Trustee had the authority to use, sell, or lease.

The Trustee succeeds to the legal and equitable interests in property the debtor had on the date the petition was filed. 11 U.S.C. § 323; *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir.1988). The Trustee succeeds to the debtor's property rights and litigation rights. 11 U.S.C. § 323; *Jones*, 858 F.2d at 669; *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir.1985); *In re Raymond Const. Co.*, 6 B.R. 793, 797 (Bankr.M.D.Fla.1980). The turnover order, however, does not dispose of any rights of the parties claiming an interest in the property beyond the rights of present possession. *In re Julien Co.*, 128 B.R. 987 (Bankr.W.D.Tenn.1991). Turnover proceedings do not remedy disputed rights to the debtor's property, but merely determine what is the property of the estate. *Julien*, 128 B.R. at 993. Once the property becomes estate property, the property may subsequently be excluded pursuant to bankruptcy law. *Goff*, 706 F.2d at 578–79. This is true on issues of exemption or exclusion. *Goff*, 706 F.2d at 579.

The parties to this action do not dispute that before *Patterson* a debtor's interest in ERISA benefit funds at the date of filing became property of the estate. Prior to *Patterson*, the question in the Seventh Circuit on this issue was whether the benefit plan barred the beneficiary and his creditors from reaching the pension funds. *See Morter v. Farm Credit Services*, 937 F.2d 354, 356–57 (7th Cir.1991).

Based on the foregoing, the issue for this Court becomes whether the law of the *Patterson* case applies retroactively to the facts of this case.

Courts have established three circumstances under which the law established by means of a judicial decision should be applied non-retroactively. The circumstances are as follows:

(1) the decision to be applied non-retroactively must establish a new principle of law, either by overruling past precedent on which the litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed;

(2) the court must weigh the merits and demerits of each case by looking to the prior history of the rule or decisions in question, its purpose and effect, and whether retrospective operation will further or retard its purpose;

(3) the court must weigh any inequity imposed by retroactive application, for where a decision could produce substantial inequitable results if applied retrospectively, the court should avoid the injustice or hardship of applying a later decision retroactively.

*In re Garrett*, 158 B.R. 859 (Bankr. M.D.Fla.1993), *citing, Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

As the court found in *Garrett*, this Court finds that the law of *Patterson* should not apply retroactively to the facts of this case. When the bankruptcy court's decision was made with regard to whether these funds were property of the estate, and at the time of the turnover proceeding, the parties do not dispute that the law was clear in the Seventh Circuit that the applicable exception set forth in § 541 did not apply to ERISA qualified plans. *Patterson* effectively overturned the law in this Circuit, and this Court cannot assume that McClellan in 1984 could have foreseen the overturn of Seventh Circuit precedent in 1992.

The primary purpose of the *Patterson* holding served to include federal law within the scope of the "applicable non-bankruptcy law" language of § 541(c)(2) of the Bankruptcy Code. The effect of this ruling resulted in a finding that the ERISA anti-alienation provision constituted an "enforceable transfer restriction" under § 541(c)(2). Nothing in the facts of this case support a finding that retrospective operation of *Patterson* would further or retard its purpose. To the contrary, the facts suggest that retroactive application of *Patterson* would impose inequitable results.

The facts, as found by the bankruptcy court, show that McClellan, through M & S, created and controlled the Plans, including the right to terminate the Plans. The court found that prior to the appointment of the Trustee, McClellan received approval from the court to arrange for the sale of M & S's assets. After appointment of the Trustee

and through McClellan's right to control the Plans, the Trustee continued the liquidation, terminated the Plans, sought turnover of the Plans' assets, distributed those assets to other participants, and held McClellan's interest in the Plans' assets as property of the estate.

The bankruptcy court also found that McClellan recognized that the Plans were part of the bankruptcy estate and that McClellan knew the Trustee was acting to terminate the Plans to obtain the assets therein. The bankruptcy court found that McClellan listed the Plans as assets of the bankruptcy estate, and did not claim an interest in the Plans as exempt. In fact, the bankruptcy court found that for eight years McClellan followed the Trustee's actions in great detail, took every step to protect his interest, but did not pursue a claim with respect to his interest in the Plans. The parties do not dispute the above factual findings.

Based on the above findings of fact, denying the retroactive application of *Patterson* would not produce substantial inequitable results here, especially as far as McClellan's interest is concerned. With respect to the Trustee, the bankruptcy court ordered the turnover of the property at issue almost nine years ago. The administration and disposition of bankruptcy estate property depends on finality. The most troubling concern for the Court is any hardship or injustice realized by the Bank. On balance, however, this issue favors the Trustee in light of the fact that nine years have passed. The Court also finds that if *Patterson* is not applied retroactively in this case, the facts do not indicate that it would retard its purpose or its application in the future.

 McClellan also argued that the Trustee merely acted as a fiduciary possessing McClellan's interest in the Plans' funds, and therefore, ERISA's anti-alienation provisions still protected McClellan's interest in the Plans. This Court rejects this argument. ERISA anti-alienation provisions apply only to benefits provided under the plan. 29 U.S.C. § 1056. Once an ERISA plan is terminated and funds therein are distributed, ERISA's anti-alienation protection over the funds terminates as well. The facts, as found by the bankruptcy court, show that the Trustee terminated the Plans and distributed the funds. McClellan's vested interest in the Plans was distributed into the property of the estate. McClellan has proffered no evidence to the contrary. Nothing in the facts of this case remotely suggest that the Trustee continued to administer the Plans pursuant to ERISA. To the contrary, the facts show that the Plans were terminated and the assets distributed from the Plans' funds.

### CONCLUSION

For the reasons set forth above, the Court finds that McClellan's interest in the Plans was properly adjudicated property of the estate and that the property remains property of the estate under the control of the bankruptcy court. The Court affirms the bankruptcy court's finding that the issue of whether the funds were property of the bankruptcy estate was finally decided and that *Patterson* should not apply retroactively to the facts of this case.