# PATTERSON, TRUSTEE *v.* SHUMATE

No. 91–913.   Argued April 20, 1992—Decided June 15, 1992

BLACKMUN, J., delivered the opinion for a unanimous Court. SCALIA, J., filed a concurring opinion, *post*, p. 766.

*G. Steven Agee* argued the cause and filed briefs for petitioner.

*Kevin R. Huennekens* argued the cause for respondent. With him on the brief were *Robert A. Lefkowitz* and *Daniel A. Gecker.*

*Christopher J. Wright* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General Bruton, Deputy Solicitor General Mahoney, Gary D. Gray,* and *Bridget M. Rowan.**

---

*David B. Tatge, pro se,* filed a brief of *amicus curiae* urging reversal. With him on the brief was *Dwight D. Meier.*

Briefs of *amici curiae* urging affirmance were filed for the American Society of Pension Actuaries by *David R. Levin;* for the Chamber of Commerce of the United States of America by *Stephen A. Bokat, Robin S. Conrad,* and *Mona C. Zeiberg;* for the ERISA Industry Committee et al. by *John M. Vine* and *Thomas M. Christina;* for Hallmark Cards, Inc., by *M. Theresa Hupp, David C. Trowbridge,* and *James B. Overman;* for Lincoln National Corporation by *Brian J. Martin;* for Wal-Mart Stores, Inc., et al. by *Phillip R. Garrison;* and for Ronald J. Wyles et al. by *David H. Adams.*

Briefs of *amici curiae* were filed for the American College of Trust and Estate Counsel by *Alvin J. Golden* and *C. Wells Hall III;* and for Eldon S. Reed by *Cathy L. Reece* and *Gary H. Ashby.*

JUSTICE BLACKMUN delivered the opinion of the Court.

The Bankruptcy Code excludes from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under "applicable nonbankruptcy law." 11 U. S. C. § 541(c)(2). We must decide in this case whether an antialienation provision contained in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law," and whether, accordingly, a debtor may exclude his interest in such a plan from the property of the bankruptcy estate.

I

Respondent Joseph B. Shumate, Jr., was employed for over 30 years by Coleman Furniture Corporation, where he ultimately attained the position of president and chairman of the board of directors. Shumate and approximately 400 other employees were participants in the Coleman Furniture Corporation Pension Plan (Plan). The Plan satisfied all applicable requirements of the Employee Retirement Income Security Act of 1974 (ERISA) and qualified for favorable tax treatment under the Internal Revenue Code. In particular, Article 16.1 of the Plan contained the antialienation provision required for qualification under § 206(d)(1) of ERISA, 29 U. S. C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated"). App. 342. Shumate's interest in the Plan was valued at $250,000. Id., at 93–94.

In 1982, Coleman Furniture filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The case was converted to a Chapter 7 proceeding, and a trustee, Roy V. Creasy, was appointed. Shumate himself encountered financial difficulties and filed a petition for bankruptcy in 1984. His case, too, was converted to a Chapter 7 proceeding, and petitioner John R. Patterson was appointed trustee.

Creasy terminated and liquidated the Plan, providing full distributions to all participants except Shumate. Patterson

then filed an adversary proceeding against Creasy in the Bankruptcy Court for the Western District of Virginia to recover Shumate's interest in the Plan for the benefit of Shumate's bankruptcy estate. Shumate in turn asked the United States District Court for the Western District of Virginia, which already had jurisdiction over a related proceeding, to compel Creasy to pay Shumate's interest in the Plan directly to him. The bankruptcy proceeding subsequently was consolidated with the District Court action. App. to Pet. for Cert. 53a–54a.

The District Court rejected Shumate's contention that his interest in the Plan should be excluded from his bankruptcy estate. The court held that § 541(c)(2)'s reference to "nonbankruptcy law" embraced only state law, not federal law such as ERISA. *Creasy* v. *Coleman Furniture Corp.*, 83 B. R. 404, 406 (1988). Applying Virginia law, the court held that Shumate's interest in the Plan did not qualify for protection as a spendthrift trust. *Id.*, at 406–409. The District Court also rejected Shumate's alternative argument that even if his interest in the Plan could not be excluded from the bankruptcy estate under § 541(c)(2), he was entitled to an exemption under 11 U. S. C. § 522(b)(2)(A), which allows a debtor to exempt from property of the estate "any property that is exempt under Federal law." 83 B. R., at 409–410. The District Court ordered Creasy to pay Shumate's interest in the Plan over to his bankruptcy estate. App. to Pet. for Cert. 54a–55a.

The Court of Appeals for the Fourth Circuit reversed. 943 F. 2d 362 (1991). The court relied on its earlier decision in *In re Moore*, 907 F. 2d 1476 (1990), in which another Fourth Circuit panel was described as holding, subsequent to the District Court's decision in the instant case, that "ERISA-qualified plans, which by definition have a nonalienation provision, constitute 'applicable nonbankruptcy law' and contain enforceable restrictions on the transfer of pension interests." 943 F. 2d, at 365. Thus, the Court of

Appeals held that Shumate's interest in the Plan should be excluded from the bankruptcy estate under § 541(c)(2). *Ibid.* The court then declined to consider Shumate's alternative argument that his interest in the Plan qualified for exemption under § 522(b). *Id.*, at 365–366.

We granted certiorari, 502 U. S. 1057 (1992), to resolve the conflict among the Courts of Appeals as to whether an antialienation provision in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for purposes of the § 541(c)(2) exclusion of property from the debtor's bankruptcy estate.[1]

## II

### A

In our view, the plain language of the Bankruptcy Code and ERISA is our determinant. See *Toibb* v. *Radloff*, 501 U. S. 157, 160 (1991). Section 541(c)(2) provides the following exclusion from the otherwise broad definition of "property of the estate" contained in § 541(a)(1) of the Code:

> "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy law* is enforceable in a case under this title." (Emphasis added.)

---

[1] Compare *In re Harline*, 950 F. 2d 669 (CA10 1991) (ERISA antialienation provision constitutes "applicable nonbankruptcy law"), cert. pending, No. 91–1412; *Velis* v. *Kardanis*, 949 F. 2d 78 (CA3 1991) (same); *Shumate* v. *Patterson*, 943 F. 2d 362 (CA4 1991) (this case; same); *In re Lucas*, 924 F. 2d 597 (CA6) (same), cert. denied *sub nom. Forbes* v. *Holiday Corp. Savings and Retirement Plan*, 500 U. S. 959 (1991); and *In re Moore*, 907 F. 2d 1476 (CA4 1990) (same), with *In re Dyke*, 943 F. 2d 1435 (CA5 1991) (ERISA antialienation provision does not constitute "applicable nonbankruptcy law"); *In re Daniel*, 771 F. 2d 1352 (CA9 1985) (same), cert. denied, 475 U. S. 1016 (1986); *In re Lichstrahl*, 750 F. 2d 1488 (CA11 1985) (same); *In re Graham*, 726 F. 2d 1268 (CA8 1984) (same); and *In re Goff*, 706 F. 2d 574 (CA5 1983) (same).

The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law. Nothing in § 541 suggests that the phrase "applicable nonbankruptcy law" refers, as petitioner contends, exclusively to *state* law. The text contains no limitation on "applicable nonbankruptcy law" relating to the source of the law.

Reading the term "applicable nonbankruptcy law" in § 541(c)(2) to include federal as well as state law comports with other references in the Bankruptcy Code to sources of law. The Code reveals, significantly, that Congress, when it desired to do so, knew how to restrict the scope of applicable law to "state law" and did so with some frequency. See, *e. g.,* 11 U. S. C. § 109(c)(2) (entity may be a debtor under chapter 9 if authorized "by State law"); § 522(b)(1) (election of exemptions controlled by "the State law that is applicable to the debtor"); § 523(a)(5) (a debt for alimony, maintenance, or support determined "in accordance with State or territorial law" is not dischargeable); § 903(1) ("[A] State law prescribing a method of composition of indebtedness" of municipalities is not binding on nonconsenting creditors); see also §§ 362(b)(12) and 1145(a). Congress' decision to use the broader phrase "applicable nonbankruptcy law" in § 541(c)(2) strongly suggests that it did not intend to restrict the provision in the manner that petitioner contends.[2]

---

[2] The phrase "applicable nonbankruptcy law" appears elsewhere in the Code, and courts have construed those references to include federal law. See, *e. g.,* 11 U. S. C. § 1125(d) (adequacy of disclosure statement not governed by any "otherwise applicable nonbankruptcy law"); *In re Stanley Hotel, Inc.,* 13 B. R. 926, 931 (Bkrtcy. Ct. Colo. 1981) (§ 1125(d) includes federal securities law); 11 U. S. C. § 108(a) (referring to statute of limitations fixed by "applicable nonbankruptcy law"); *In re Ahead By a Length, Inc.,* 100 B. R. 157, 162–163 (Bkrtcy. Ct. SDNY 1989) (§ 108(a) includes Racketeer Influenced and Corrupt Organizations Act); *Motor Carrier Audit & Collection Co.* v. *Lighting Products, Inc.,* 113 B. R. 424, 425–426 (ND Ill. 1989) (§ 108(a) includes Interstate Commerce Act); 11 U. S. C.

The text of § 541(c)(2) does not support petitioner's contention that "applicable nonbankruptcy law" is limited to state law. Plainly read, the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA. We must enforce the statute according to its terms. See *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241 (1989).

B

Having concluded that "applicable nonbankruptcy law" is not limited to state law, we next determine whether the anti-alienation provision contained in the ERISA-qualified Plan at issue here satisfies the literal terms of § 541(c)(2).

Section 206(d)(1) of ERISA, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U. S. C. § 1056(d)(1), clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust. The coordinate section of the Internal Revenue Code, 26 U. S. C. § 401(a)(13), states as a general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated," and thus contains similar restrictions. See also 26 CFR § 1.401(a)–13(b)(1) (1991).

Coleman Furniture's pension plan complied with these requirements. Article 16.1 of the Plan specifically stated: "No benefit, right or interest" of any participant "shall be subject

---

§ 108(b) (referring to time for filing pleadings, notices, etc., fixed by "applicable nonbankruptcy law"); *Eagle-Picher Industries, Inc.* v. *United States*, 290 U. S. App. D. C. 307, 321–322, 937 F. 2d 625, 639–640 (1991) (§ 108(b) includes Federal Tort Claims Act). Although we express no view on the correctness of these decisions, we note that our construction of § 541(c)(2)'s reference to "applicable nonbankruptcy law" as including federal law accords with prevailing interpretations of that phrase as it appears elsewhere in the Code. See *Morrison-Knudsen Constr. Co.* v. *Director, Office of Workers' Compensation Programs*, 461 U. S. 624, 633 (1983) (recognizing principle "that a word is presumed to have the same meaning in all subsections of the same statute").

to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or other legal, equitable or other process." App. 342.

Moreover, these transfer restrictions are "enforceable," as required by § 541(c)(2). Plan trustees or fiduciaries are required under ERISA to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U. S. C. § 1104(a)(1)(D). A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan. §§ 1132(a)(3) and (5). Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar. See *Guidry* v. *Sheet Metal Workers Nat. Pension Fund,* 493 U. S. 365 (1990).[3]

The antialienation provision required for ERISA qualification and contained in the Plan at issue in this case thus constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate.

### III

Petitioner raises several challenges to this conclusion. Given the clarity of the statutory text, however, he bears an "exceptionally heavy" burden of persuading us that Congress intended to limit the § 541(c)(2) exclusion to restrictions on transfer that are enforceable only under state spendthrift trust law. *Union Bank* v. *Wolas,* 502 U. S. 151, 155–156 (1991).

---

[3] The Internal Revenue Service at least on occasion has espoused the view that the transfer of a beneficiary's interest in a pension plan to a bankruptcy trustee would disqualify the plan from taking advantage of the preferential tax treatment available under ERISA. See *McLean* v. *Central States, Southeast & Southwest Areas Pension Fund,* 762 F. 2d 1204, 1206 (CA4 1985); see also *In re Moore,* 907 F. 2d, at 1481.

A

Petitioner first contends that contemporaneous legislative materials demonstrate that § 541(c)(2)'s exclusion of property from the bankruptcy estate should not extend to a debtor's interest in an ERISA-qualified pension plan. Although courts "appropriately may refer to a statute's legislative history to resolve statutory ambiguity," *Toibb* v. *Radloff,* 501 U. S., at 162, the clarity of the statutory language at issue in this case obviates the need for any such inquiry. See *ibid.; United States* v. *Ron Pair Enterprises, Inc.,* 489 U. S., at 241; *Davis* v. *Michigan Dept. of Treasury,* 489 U. S. 803, 809, n. 3 (1989).[4]

Even were we to consider the legislative materials to which petitioner refers, however, we could discern no "clearly expressed legislative intention" contrary to the result reached above. See *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 447 U. S. 102, 108 (1980). In his brief, petitioner quotes from House and Senate Reports accompanying the Bankruptcy Reform Act of 1978 that purportedly reflect "unmistakable" congressional intent to limit § 541(c)(2)'s exclusion to pension plans that qualify under state law as spendthrift trusts. Brief for Petitioner 38. Those reports contain only the briefest of discussions addressing § 541(c)(2). The House Report states: "Paragraph (2) of subsection (c) . . . preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law." H. R. Rep. No. 95–595, p. 369 (1977); see also S. Rep. No. 95–989, p. 83 (1978) (§ 541(c)(2) "preserves restrictions on a transfer of a spendthrift trust"). A general introductory section to

---

[4] Those Courts of Appeals that have limited "applicable nonbankruptcy law" to state spendthrift trust law by ignoring the plain language of § 541(c)(2) and relying on isolated excerpts from the legislative history thus have misconceived the appropriate analytical task. See, *e. g., In re Daniel,* 771 F. 2d, at 1359–1360; *In re Lichstrahl,* 750 F. 2d, at 1490; *In re Graham,* 726 F. 2d, at 1271–1272; *In re Goff,* 706 F. 2d, at 581–582.

the House Report contains the additional statement that the new law "continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." H. R. Rep. No. 95–595, p. 176. These meager excerpts reflect at best congressional intent to *include* state spendthrift trust law within the meaning of "applicable nonbankruptcy law." By no means do they provide a sufficient basis for concluding, in derogation of the statute's clear language, that Congress intended to *exclude* other state and federal law from the provision's scope.

B

Petitioner next contends that our construction of § 541(c)(2), pursuant to which a debtor may exclude his interest in an ERISA-qualified pension plan from the bankruptcy estate, renders § 522(d)(10)(E) of the Bankruptcy Code superfluous. Brief for Petitioner 24–33. Under § 522(d)(10)(E), a debtor who elects the federal exemptions set forth in § 522(d) may exempt from the bankruptcy estate his right to receive "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract . . . , to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." If a debtor's interest in a pension plan could be *excluded* in full from the bankruptcy estate, the argument goes, then there would have been no reason for Congress to create a limited *exemption* for such interests elsewhere in the statute.

Petitioner's surplusage argument fails, however, for the reason that § 522(d)(10)(E) exempts from the bankruptcy estate a much broader category of interests than § 541(c)(2) excludes. For example, pension plans established by governmental entities and churches need not comply with Subchapter I of ERISA, including the antialienation requirement of § 206(d)(1). See 29 U. S. C. §§ 1003(b)(1) and (2); 26 CFR § 1.401(a)–13(a) (1991). So, too, pension plans that

qualify for preferential tax treatment under 26 U. S. C. § 408 (individual retirement accounts) are specifically excepted from ERISA's antialienation requirement. See 29 U. S. C. § 1051(6). Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law," that interest[5] nevertheless could be exempted under § 522(d)(10)(E).[6] Once petitioner concedes that § 522(d)(10)(E)'s exemption applies to more than ERISA-qualified plans containing antialienation provisions, see Tr. of Oral Arg. 10–11; Brief for Petitioner 31, his argument that our reading of § 541(c)(2) renders the exemption provision superfluous must collapse.

C

Finally, petitioner contends that our holding frustrates the Bankruptcy Code's policy of ensuring a broad inclusion of assets in the bankruptcy estate. See *id.*, at 37; 11 U. S. C. § 541(a)(1) (estate composed of "all legal or equitable interests of the debtor in property as of the commencement of the case"). As an initial matter, we think that petitioner

---

[5] We express no opinion on the separate question whether § 522(d)(10)(E) applies only to distributions from a pension plan that a debtor has an immediate and present right to receive, or to the entire undistributed corpus of a pension trust. See, *e. g., In re Harline,* 950 F. 2d, at 675; *Velis* v. *Kardanis,* 949 F. 2d, at 81–82. See also Arnopol, Including Retirement Benefits in a Debtor's Bankruptcy Estate: A Proposal for Harmonizing ERISA and the Bankruptcy Code, 56 Mo. L. Rev. 491, 535–536 (1991).

[6] Even those courts that would have limited § 541(c)(2) to state law acknowledge the breadth of the § 522(d)(10)(E) exemption. See *In re Goff,* 706 F. 2d, at 587 (noting that § 522(d)(10)(E) "reaches a broad array of employment benefits, and exempts both qualified and unqualified pension plans") (footnote omitted); *In re Graham,* 726 F. 2d, at 1272 (observing that "the § 522(d)(10)(E) exemption would apply to non-ERISA plans as well as to qualified ERISA plans"). See also Arnopol, 56 Mo. L. Rev., at 525–526, 552–553; Seiden, Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?, 61 Am. Bankr. L. J. 301, 318 (1987).

mistakes an admittedly broad definition of includable property for a "policy" underlying the Code as a whole. In any event, to the extent that policy considerations are even relevant where the language of the statute is so clear, we believe that our construction of § 541(c)(2) is preferable to the one petitioner urges upon us.

First, our decision today ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status. See *Butner* v. *United States*, 440 U. S. 48, 55 (1979) (observing that "[u]niform treatment of property interests" prevents "a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy,'" quoting *Lewis* v. *Manufacturers National Bank*, 364 U. S. 603, 609 (1961)). We previously have declined to recognize any exceptions to ERISA's antialienation provision *outside* the bankruptcy context. See *Guidry* v. *Sheet Metal Workers Nat. Pension Fund*, 493 U. S. 365 (1990) (labor union may not impose constructive trust on pension benefits of union official who breached fiduciary duties and embezzled funds). Declining to recognize any exceptions to that provision *within* the bankruptcy context minimizes the possibility that creditors will engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds. See Seiden, Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?, 61 Am. Bankr. L. J. 301, 317 (1987) (noting inconsistency if "a creditor could not reach a debtor-participant's plan right or interest in a garnishment or other collection action outside of a bankruptcy case but indirectly could reach the plan right or interest by filing a petition . . . to place the debtor in bankruptcy involuntarily").

Our holding also gives full and appropriate effect to ERISA's goal of protecting pension benefits. See 29 U. S. C. §§ 1001(b) and (c). This Court has described that goal as one

of ensuring that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit— he actually will receive it." *Nachman Corp.* v. *Pension Benefit Guaranty Corporation,* 446 U. S. 359, 375 (1980). In furtherance of these principles, we recently declined in *Guidry,* notwithstanding strong equitable considerations to the contrary, to recognize an implied exception to ERISA's antialienation provision that would have allowed a labor union to impose a constructive trust on the pension benefits of a corrupt union official. We explained:

> "Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task." 493 U. S., at 376.

These considerations apply with equal, if not greater, force in the present context.

Finally, our holding furthers another important policy underlying ERISA: uniform national treatment of pension benefits. See *Fort Halifax Packing Co.* v. *Coyne,* 482 U. S. 1, 9 (1987). Construing "applicable nonbankruptcy law" to include federal law ensures that the security of a debtor's pension benefits will be governed by ERISA, not left to the vagaries of state spendthrift trust law.

## IV

In light of our conclusion that a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2), we need not reach respondent's alternative argument that

his interest in the Plan qualifies for exemption under § 522(b)(2)(A).

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE SCALIA, concurring.

The Court's opinion today, which I join, prompts several observations.

When the phrase "applicable nonbankruptcy law" is considered in isolation, the phenomenon that three Courts of Appeals could have thought it a synonym for "state law" is mystifying. When the phrase is considered together with the rest of the Bankruptcy Code (in which Congress chose to refer to state law as, logically enough, "state law"), the phenomenon calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting text, that it any longer makes sense to talk of "a government of laws, not of men."

Speaking of agreed-upon methodology: It is good that the Court's analysis today proceeds on the assumption that use of the phrases "state law" and "applicable nonbankruptcy law" in *other* provisions of the Bankruptcy Code is highly relevant to whether "applicable nonbankruptcy law" means "state law" in § 541(c)(2), since consistency of usage within the same statute is to be presumed. *Ante*, at 758, and n. 2. This application of a normal and obvious principle of statutory construction would not merit comment, except that we explicitly rejected it, in favor of a one-subsection-at-a-time approach, when interpreting another provision of this very statute earlier this Term. See *Dewsnup* v. *Timm*, 502 U. S. 410, 416–417 (1992); *id.*, at 420–423 (SCALIA, J., dissenting). "[W]e express no opinion," our decision said, "as to whether the words [at issue] have different meaning in other provisions of the Bankruptcy Code." *Id.*, at 417, n. 3. I trust

that in our search for a neutral and rational interpretive methodology we have now come to rest, so that the symbol of our profession may remain the scales, not the seesaw.