In re Wilker S. CONNER; Janice M. Conner, Debtors.

John BARKLEY, Trustee, Appellant,

v.

Wilker S. CONNER; Janice M. Conner; Orthopedic Clinic 401K Profit Sharing Plan and Trust Agreement; Puregro Company, Appellees.

BAP No. AZ–93–1440–RJH.
Bankruptcy No. 91–01549–PL–LO.
Adv. No. A92–0249.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued Feb. 24, 1994.

Submitted March 7, 1994.

Decided April 29, 1994.

Michael D. McGrath, Tucson, AZ, for appellant.

Ellen M. Van Riper, Phoenix, AZ, for appellees.

Before RUSSELL, JONES, and HAGAN, Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

This appeal arises from a bankruptcy court's order denying the Chapter 7[1] trustee's motion for turnover of the debtor's interest in an employer's profit sharing and pension plan. The Chapter 7 trustee appeals. We AFFIRM.

## I. FACTS

The debtors, Wilker and Janice Conner, ("Conners"), filed their Chapter 7 petition on May 2, 1991. The Conners claimed Janice Conner's interest in her pension and profit sharing plan ("plan") maintained by her employer, the Orthopedic Clinic ("Clinic"), was excluded from property of their estate pursuant to § 541(c)(2).

In 1980, the Clinic established an ERISA-qualified[2] 401(k) profit sharing plan. Since January 1, 1987, funding for the plan included: (1) employer contributions; (2) employer matching contributions; (3) employee pre-tax dollar contributions; (4) employee after-tax dollar contributions (not permitted after 1/1/87); and (5) employee rollover contributions.

The plan also contained an anti-alienation provision:

"Except as provided under Section 8.9 [plan loans], the interest herein, whether vested or not, of any Participant or Beneficiary, shall not be subject to alienation, assignment, encumbrance, attachment, garnishment, execution, sequestration or other legal or equitable process, or transferability by operation of law in the event of bankruptcy, insolvency or otherwise."

The property at issue is the employee after-tax dollar contributions as described in paragraph (4) above ("after-tax account"). In 1988, the Clinic modified the plan and a document was issued to plan participants summarizing the changes. The document of changes stated that the funds in the after-tax

account could be withdrawn at any time and for any reason.

The Chapter 7 trustee, John Barkley ("trustee"), instituted this adversary proceeding to require turnover of the after-tax contributions which, at the time of the Conners' bankruptcy filing, were worth approximately $38,000. The trustee did not assert an interest in any other portion of the plan.

The bankruptcy court denied the trustee's request, holding that *Patterson v. Shumate,* 504 U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), controlled and therefore, the Conners' interest in the plan, including the after-tax account, was excepted from property of the estate. The trustee timely filed a notice of appeal.

## II. ISSUE

Whether the Conners' after-tax dollar contributions to their employer's ERISA-qualified plan is excluded as property of the estate pursuant to § 541(c)(2).

## III. STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo.* *In re Bronner,* 135 B.R. 645, 646 (9th Cir. BAP 1992). Mixed questions of law and fact are also reviewed *de novo.* *Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991).

## IV. DISCUSSION

A bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(c)(2), however, creates an exception. An interest in property is excluded from the estate if it contains "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law...." 11 U.S.C. § 541(c)(2).

Recently, the Supreme Court in *Patterson v. Shumate,* resolved a conflict among the

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

2. Employee Retirement Income Security Act of 1974 as codified in 29 U.S.C. §§ 1001 *et seq.*

circuits regarding § 541(c)(2), holding that a pension plan under ERISA which contains an anti-alienation provision constitutes, for purposes of § 541(c)(2), a restriction enforceable under "applicable nonbankruptcy law." 504 U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519, 528 (1992). Since the trustee concedes in his opening brief that "the funds at issue [after-tax dollar contributions] are part of an overall 'ERISA-qualified' plan ...," the Conners' entire ERISA plan should be excluded from the estate under *Shumate's* interpretation of § 541(c)(2).

The trustee, however, contends that the after-tax account does not have the requisite restrictions and therefore, *Shumate* is inapplicable to this account. The trustee asserts that even after *Shumate*, control is still a relevant inquiry. Since the Conners have the ability to withdraw the after-tax contributions at any time, the trustee believes these contributions should be property of the estate. We disagree.

Control over the funds was not at issue in *Shumate*. The Court held that an ERISA-qualified plan which contains an anti-alienation provision "constitutes an enforceable transfer restriction for purposes of § 541(c)(2) exclusion of property from the bankruptcy estate." *Shumate*, 504 U.S. at ——, 112 S.Ct. at 2248, 119 L.Ed.2d at 528. The Court did not distinguish between ERISA-qualified plans where the debtor did or did not have control. Moreover, as the circuit noted in *Shumate v. Patterson*, 943 F.2d 362, 363 (4th Cir.1991), *aff'd, Patterson v. Shumate*, 504 U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the debtor controlled ninety-six percent of the voting stock and therefore could technically terminate the plan at will.

Furthermore, in *In re Rueter*, 11 F.3d 850 (9th Cir.1993), the Ninth Circuit recently held that voluntary contributions by an employee/debtor to an ERISA-qualified plan, which could be withdrawn at any time by the employee/debtor, qualified for exclusion pursuant to § 541(c)(2). *Id.* at 853.

In *Rueter*, the debtor's employer provided to its employees a pension and profit sharing plan that satisfied the ERISA requirements and contained an anti-alienation provision.

*Id.* at 851. Under the plan, a participant could also contribute up to six dollars a week personally and could withdraw these contributions at any time. *Id.* The Ninth Circuit stated that "[u]nder *Shumate*, a court need look no further than whether the ERISA-qualified plan at issue has an anti-alienation provision...." *Id.* at 852. Therefore, the Court held that the entire plan qualified for exclusion, under § 541(c)(2), as an ERISA-qualified pension plan. *Id.* at 853.

Since it is undisputed that this is an ERISA-qualified plan with an anti-alienation provision, we hold that the entire plan, including the employee after-tax contributions, qualifies under the § 541(c)(2) standards articulated in *Shumate*.

## V. CONCLUSION

The bankruptcy court properly concluded that the Conners' interest in their after-tax contributions to their employer's ERISA-qualified plan is excluded from property of the Conners' estate pursuant to § 541(c)(2).

JONES, Bankruptcy Judge, concurring:

In *Patterson v. Shumate*, the Supreme Court established a two-prong test for determining whether pension benefits in an ERISA-qualified plan are excluded from property of the estate under applicable nonbankruptcy law pursuant to 11 U.S.C. § 541(c)(2). *Patterson v. Shumate*, 504 U.S. ——, ——, 112 S.Ct. 2242, 2247–48, 119 L.Ed.2d 519, 527–28 (1992). First, a court must evaluate whether the ERISA-qualified plan contains an anti-alienation provision which constitutes a restriction on transfer that is enforceable under nonbankruptcy law within the plain meaning of section 541(c)(2). *Id.* Under this first prong, the Supreme Court in *Shumate* resolved a conflict in the circuits in holding that "applicable nonbankruptcy law" is not limited to state law. 112 S.Ct. at 2246–48, 119 L.Ed.2d at 526–28.

The second step in the analysis posited by the *Shumate* Court is to determine whether the anti-alienation provision contained in an ERISA-qualified plan satisfies the terms of section 541(c)(2). *Shumate*, 112 S.Ct. at 2248, 119 L.Ed.2d at 528. In the instant

appeal it is undisputed that the Debtor has access to the funds in the after-tax account at any time and for any reason. Therefore, the Debtor may be unable to satisfy the second prong of the *Shumate* analysis which entails subjecting the anti-alienation provision to scrutiny under section 541(c)(2).

However, since this panel is obligated to follow controlling authority on this issue, *In re Reuter,* 11 F.3d 850 (9th Cir.1993), I respectfully concur.