**In re Thomas J. SILVIERA, Debtor.**

**Bankruptcy No. 95–13208–JNF.**

United States Bankruptcy Court,
E.D. Massachusetts.

Sept. 8, 1995.

Gary W. Cruickshank, Boston, MA, for Chapter 7 Trustee.

Richard Hackel, Boston, MA, for debtor.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I.  INTRODUCTION

The matter before the Court is an objection filed by the Chapter 7 Trustee to the Debtor's claimed exemption. The Debtor filed a response to the Trustee's objection, and the Court, after hearing, took the matter under advisement. The pleadings filed by the parties raise two issues: 1) whether the Debtor's interest in a pension plan is excluded from property of the estate pursuant to 11 U.S.C. § 541(c)(2)[1]; and (2) if not, whether it

---

**1.** The Bankruptcy Code excludes from property of the estate property of the debtor that is subject to "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law...." 11 U.S.C. § 541(c)(2).

is exempt from property of the estate pursuant to 11 U.S.C. § 522(d)(10)(E)[2].

## II. FACTS

The material facts with respect to the issue under section 541(c)(2) do not appear to be in dispute. Accordingly, the Court shall treat the Trustee's objection in so far as it addresses the exclusion of the Debtor's pension benefits from property of the estate as a motion for summary judgment. *See* Fed. R.Civ.P. 56(c), made applicable to this proceeding by Fed.R.Bankr.P. 7056.

The Debtor is 46 years old and single. He has no dependents. He has been employed by the City of Somerville as a policeman for 21 years. He is a member of the contributory retirement system for public employees, *see* Mass.Gen.Laws Ann. Ch. 32, §§ 1–28 (West 1989 & Supp.1995), a statutorily governed system that is funded from mandatory payroll deductions. The Debtor's Schedules I and J reveal that his total monthly income is $4,247.00 and that his total monthly expenses are $3,864.00, of which $893.00 is attributable to tax and mortgage payments for a cottage in New Hampshire.

On an addendum to Schedule B the Debtor stated that his retirement plan "is an ERISA 'sheltered' plan and as such, whatever funds the debtor may have credited to his retirement account are not assets of this estate under 11 USC 541(c)." On Schedule C, the Debtor claimed his pension benefits as exempt "to the extent that same are an asset of this estate" and "to the extent necessary for the support of the debtor and his dependents."

## III. DISCUSSION

### A. The Positions of the Parties

The Trustee, in his objection, argues that the Debtor's retirement plan is not an ERISA[3] qualified plan subject to the Supreme Court's decision in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), and, therefore, is not excluded from the Debtor's bankruptcy estate. Additionally, the Trustee argues that under this Court's decision in *In re Link*, 172 B.R. 707 (Bankr.D.Mass.1994), no part of the Debtor's retirement plan is reasonably necessary for his support.

In his response to the Trustee's objection, the Debtor asks the Court to infer that an anti-alienation provision contained in G.L. c. 32 makes his pension plan analogous to the ERISA qualified plan described in *Patterson* and supports his contention that his pension benefits are excluded from property of the estate. Alternatively, he maintains that an evidentiary hearing is required to determine both the value of the benefits to which he would be entitled as of the commencement of the case and the extent to which the benefits are reasonably necessary for his support.

The first issue raised by the pleadings is one of first impression in this district. The Court has been unable to discover any bankruptcy cases in which debtors have either claimed that their compulsory retirement system benefits are excluded from property of the estate or are exempt under the federal or state exemption schemes.

### B. The Massachusetts Contributory Retirement System

The statutory provisions governing the compulsory retirement system are extensive and complex. The Supreme Judicial Court has described the system in broad terms as follows:

> The system is a contributory defined benefit system. Members of the system make periodic contributions into an annuity account during the course of their employment with the State. See G.L. 32, § 22(1). The individual account of each contributing member is a record of the amount of the

**2.** Section 522(d)(10)(E) provides in relevant part the following:

> (d) The following property may be exempted under section (b)(1) of this section:—
> (10) The debtor's right to receive—
> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability,

death, age, or length of service to the extent reasonably necessary for the support of the debtor and any dependent of the debtor....

11 U.S.C. § 522(d)(10)(E).

**3.** Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

individual member's contributions to the system. See G.L. c. 32, § 22(6)(b). In the event a member terminates employment with the State prior to becoming eligible to receive retirement benefits, he can seek a refund on the amount of contributions plus interest. [See G.L. c. 32, § 10–11]. However, if an employee maintains employment until becoming eligible to collect retirement benefits, the amount of benefits is not tied to the dollar value of his account, but rather is dependent on a number of variables not determinable until the date of eligibility, see G.L. c. 32, §§ 5–7 (1994 ed.), as well as the option he elects on retirement, see G.L. c. 32, § 12.

*Early v. State Board of Retirement,* 420 Mass. 836, 841, 652 N.E.2d 598 (1995). In addition to the provisions just described, G.L. c. 32 contains an anti-alienation section that provides, in relevant part, the following:

> The funds of each system established under the provisions of sections one to twenty-eight, inclusive, so far as they are invested in personal property, shall be exempt from taxation. *The rights of a member to an annuity, pension or retirement allowance, such annuity, pension or retirement allowance itself, and all his rights in the funds of any system established under the provisions of such sections, shall be exempt* from taxation, including income taxes levied under the provisions of chapter sixty-two, and *from the operation of any law relating to bankruptcy or insolvency and shall not be attached or taken upon execution or other process.* That portion of the estate of any deceased member consisting of any sum or sums received from any system under the provisions of sections one to twenty-eight, inclusive, shall not be included in computing any legacy or succession tax under the provisions of chapter sixty-five. *No assignment of any right in or to any funds, annuities, pensions or retirement allowances under any system shall be valid* except such assignment as may be made for the purpose of making restitution in the case of dereliction of duty by any member as set forth in section fifteen, and except such assignment made in writing by a retired member, authorizing the board to withhold each month such amount as he may designate for the payment of subscriber premiums applicable to a hospitalization, medical and surgical insurance, or to a life insurance in effect with a nonprofit hospital and medical service corporation or insurance company at the time of his retirement, and except such assignment made in writing by a retired member authorizing the board to withhold each month such amount as he may designate for the payment of income taxes levied under the Internal Revenue Code of the United States or the General Laws of the commonwealth. . . .

> Nothing in this section shall prevent a member's annuity pension or retirement allowance from being attached, taken on execution, assigned, or subject to other process to satisfy a support order under chapter two hundred and eight, two hundred and nine, two hundred and nine A, two hundred and nine C, two hundred and seventy-three or an assignment of marital property under chapter two hundred and eight.

Mass.Gen.Laws.Ann. Ch. 32, § 19 (emphasis supplied).

### C. Analysis

■ There have been relatively few decisions dealing with public employee retirement plans, which are exempt from ERISA coverage under 29 U.S.C.A. § 1003(b)(1) (West 1994). In *In re Swanson,* 873 F.2d 1121 (8th Cir.1989), the Court of Appeals for the Eighth Circuit held that a debtor/employee's interest in a state created teachers' retirement fund under which teachers made mandatory contributions, refundable on termination or retirement, was property of the estate. Noting that the Teachers' Retirement Association relied upon a Minnesota statute, which provided numerous restrictions on the transfer of interests in the Teachers' Retirement Fund, as the "applicable nonbankruptcy law," the court determined that the Fund lacked the necessary characteristics of a traditional spendthrift trust to exclude the debtors' interests in it from the bankruptcy estate. The court, having determined that " 'Congress only intend-

ed ... § 541(c)(2) to preserve the status of traditional spendthrift trusts, as recognized by state law ...,'" found that the Fund 1) violated the rule that prohibits the beneficiary of a spendthrift trust from also being its settlor; 2) enabled beneficiaries to make contributions to Fund; and 3) enabled the debtors to exercise *dominion* and control over monies in the Fund since members were entitled to a refund of their contributions upon termination of employment. 873 F.2d at 1124 (citation omitted). The court added the following:

> While this is a very limited right of control over the Funds, the ability of the beneficiary to control trust assets in any way is inimical to the policies underlying the spendthrift trust.
>
> *     *     *     *     *     *
>
> We recognize that the Fund does have some characteristics of a spendthrift trust, i.e., it is not assignable and creditors are barred from levying upon monies held in the Fund. On balance, however, we believe that the Fund lacks the necessary characteristics of a traditional spendthrift trust. Nevertheless, we do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under § 541(c)(2).

*Id. Accord In re Lyons,* 118 B.R. 634, 640 (C.D.Ill.1990), *aff'd,* 957 F.2d 444 (7th Cir. 1992) (state employees' retirement system does not qualify as a spendthrift trust since employees may obtain a refund upon termination of employment); *In re Groves,* 120 B.R. 956 (Bankr.N.D.Ill.1990) (same).

In *In re Childs,* 129 B.R. 14 (Bankr. D.Conn.1991), the bankruptcy court refused to follow *Swanson.* In that case, the debtor was 52 years old, single, in good health and a member of the state employees' retirement system similar to the system existing in Massachusetts. The court stated the following:

> The debtor's interest in the Connecticut retirement system is hardly self-settled in the traditional sense. It is a nonwaivable condition of employment that a portion of the employee's salary be taken to fund a pension system for reasons seemingly congruent to those underlying the federal social security system. The debtor has no right to increase the amount of the payroll deduction and thereby unilaterally increase the value of the property interest in the fund.

129 B.R. at 17. The court also noted that the state pension plan was not "unlike a spendthrift trust, except that it is stronger in purpose by virtue of statute and constitution," and that Connecticut courts had not disqualified privately created pension plans as spendthrift trusts because an employee may obtain a refund of contributions upon termination of employment. *Id.* (citations omitted). *See also In re Morter v. Farm Credit Services (In re Morter),* 937 F.2d 354, 357 (7th Cir.1991) ("The proper inquiry under section 541(c)(2), then, is not whether the accumulated funds are in a 'traditional' spendthrift trust, but whether the retirement plan bars the beneficiary and his creditors from reaching the funds. If it does, the plan is tantamount to a spendthrift trust under state law.").

The decisions discussed above preceded the decision in *Patterson v. Shumate.* In *Patterson,* the United States Supreme Court unequivocally rejected the underpinnings of *Swanson* and its progeny, namely that Congress intended to limit section 541(c)(2) to pension plans that qualify under state law as spendthrift trusts. *See* 504 U.S. at 762, 112 S.Ct. at 2248–49. *See also Whetzal v. Alderson,* 32 F.3d 1302, 1304 (8th Cir.1994). Accordingly, the Court must examine the issue of whether the Debtor's pension plan is excluded from property of the estate using the analysis delineated in *Patterson.*

■ In *Patterson,* the Supreme Court held that, "plainly read," section 541(c)(2) does not limit the phrase "applicable nonbankruptcy law" to state law and in particular state spendthrift trust law, 504 U.S. at 758, 112 S.Ct. at 2246–47, and that the debtor's ERISA-qualified pension plan, which did not satisfy the requirements of a spendthrift trust but which had the anti-alienation provision required for qualification under section 206(d) of ERISA, 29 U.S.C. § 1056(d)(1), satisfied the literal terms of section 541's transfer restriction because the restriction was enforceable under ERISA. *Id.* at 549. Re-

ferring to pension plans established by governmental entities and churches, the Court noted in *dicta* that a debtor's interest in certain plans may not be excluded from the bankruptcy estate because of the absence of anti-alienation provisions enforceable under applicable nonbankruptcy law. 504 U.S. at 762–63, 112 S.Ct. at 2248–49. Consequently, the Supreme Court's decision limits the focus under section 541(c)(2) to finding three elements: 1) a beneficial interest belonging to the Debtor in a trust; 2) a restriction on the transfer of the Debtor's beneficial interest in the trust; and 3) the enforceability of the restriction under applicable nonbankruptcy law. *Matter of Fink*, 153 B.R. 883, 885 (Bankr.D.Neb.1993). Thus, the element of control and access to the retirement funds which featured prominently in the analyses of the courts in *Swanson* and *Morter* is no longer determinative in situations where the applicable nonbankruptcy law is law other than state spendthrift trust law.

This was emphasized by the court in *In re Conner*, 165 B.R. 901 (9th Cir. BAP 1994). In that case, the Bankruptcy Appellate Panel of the Ninth Circuit noted that in *Patterson* the debtor controlled ninety-six percent of the voting stock of the corporation that had established the ERISA qualified plan and, therefore, technically could terminate the plan at will. According to the court, control over the funds in the debtor's pension plan was not an issue in the case, as the Supreme Court did not distinguish between ERISA qualified plans where the debtor did or did not have control, 165 B.R. at 902. *See also In re Rueter*, 11 F.3d 850 (9th Cir.1993) (voluntary contributions by an employee/debtor to an ERISA qualified plan, which could be withdrawn at any time by the debtor, qualified for exclusion under section 541(c)(2)).

Although the Court has been unable to locate any post-*Patterson* decisions involving state created public employee retirement plans containing anti-alienation provisions on

point, the Court notes that in *Whetzal v. Alderson*, the Eighth Circuit determined that a former federal employee's right to receive a lump-sum retirement benefit was excluded from the bankruptcy estate. The debtor had participated in the Civil Service Retirement System and contributed over $30,000 toward retirement benefits. Upon retirement, he had the option of withdrawing his benefits as a lump sum. However, he did not exercise that right. Nevertheless, several creditors filed a complaint seeking the transfer of the benefits to the bankruptcy estate. The bankruptcy judge determined that, because the debtor had the right to request a lump-sum benefit at the time he filed for bankruptcy, the trustee likewise had the right to exercise the option. The district court affirmed. On appeal, the Eighth Circuit found that a restriction on transfer of the debtor's beneficial interest applied to both the lump sum and annuity provisions of the plan and, thus, the lump sum provision was within the scope of section 541(c)(2). The court stated that "[a]lthough *Shumate* was an ERISA case, the same basic concern for pension benefits applies to federal employees as well as those in the private sector." 32 F.3d at 1304.

A similar rationale applies to the instant case, which is more straightforward than *Whetzal*. Here, the Debtor has no present right to receive pension benefits, and his ability to access his contributions would require him to leave his employment as a police officer.

This Court finds the Debtor has a beneficial interest in a statutory trust that is subject to a restriction that is enforceable under applicable nonbankruptcy law—G.L. c. 32.[4] Therefore, the Debtor's pension plan is excluded from property of the estate. The Debtor's potential access to funds deducted from his wages is not determinative, as this Court need not find that the retirement system is, or is tantamount to, a spendthrift trust under Massachusetts law.[5]

---

4. While G.L. c. 32 lacks the express enforcement procedures available in ERISA, 29 U.S.C. § 1132, Massachusetts courts have entertained motions to discharge attachments that violate

G.L. c. 32, § 19. *See Utley v. Utley*, 355 Mass. 469, 245 N.E.2d 435 (1969).

5. This case is distinguishable from *In re Kellogg*, 179 B.R. 379 (Bankr.D.Mass.1995), and *In re*

■ Parenthetically, the Court notes that even if it were to find that the Debtor's interest in the contributory retirement system is property of the estate under 11 U.S.C. § 541(a) the Trustee would be unable to compel turnover of the funds where the Debtor has no present right to them. *See Matter of Sanders,* 969 F.2d 591 (7th Cir.1992) (trustee could not compel turnover of debtor's contributions to state employee retirement system because, until termination of employment, retirement or disability, the debtor had no present right to withdraw contribution); *Matter of Lyons,* 957 F.2d 444 (7th Cir.1992).

## IV. CONCLUSION

In view of the foregoing, the Court need not address the Trustee's alternative position that the Debtor's pension benefits are not exempt from property of the estate under section 522(d)(10)(E) because they are not reasonably necessary for the Debtor's support. Thus, the Court overrules the Trustee's objection in its entirety. An appropriate order shall issue.

### ORDER

In accordance with the Memorandum dated September 8, 1995, the Court hereby overrules the "Trustee's Objection to the Debtor's Claimed Exemption," as the Debtor's interest in a pension plan under the Massachusetts contributory retirement system is not property of the estate.

*Orkin,* 170 B.R. 751 (Bankr.D.Mass.1994). In *Kellogg,* the court determined that the debtor's simplified retirement plan (SEP) was not subject to ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), and, therefore, its gratuitous restriction provision was not enforceable under ERISA or state spendthrift trust law. 179 B.R. at 387–89. In *Orkin,* the court determined that the debtor's plan was not ERISA qualified, and, therefore, the anti-alienation provision was unenforceable under both federal and state law.