**In re Julio C. BANDERAS, Debtor.**

**Bankruptcy No. 97–16392–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Sept. 23, 1998.

Julio C. Banderas, Cape Coral, FL, pro se.

Louis Amato, Naples, FL, for plaintiff.

Diane L. Jensen, Ft. Myers, FL, trustee.

Theodore N. Stapleton, Atlanta, GA, for defendant.

Alberto F. Gomez, Jr., Tampa, FL, for trustee.

## ORDER ON TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS (DOC. NO. 41B)

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 case is the Trustee's Objection to Debtor's Claim of Exemptions, specifically, the objection to the Debtor's claim that the funds in his IRA and Profit Sharing Plan are exempt property pursuant to Florida Statute § 222.21.

Dr. Julio C. Banderas (Debtor), an orthopedic surgeon, was the sole shareholder of Banderas Orthopedic Clinic, P.C. ("PC") from February 1973 until January 1991. In January 1991, the Debtor sold the assets of the PC, with the exception of the accounts receivables, to Dr. Alexander Doman. Following the sale of the PC's assets to Dr. Doman, the Debtor became a provider pursuant to a provider agreement between the Debtor and Dr. Doman's professional corporation, Atlanta Orthopedic & Sports Medicine, P.A. In May 1993, the Debtor ceased working under the provider agreement with Dr. Doman and reestablished his independent medical practice under the previous PC. In January 1996, the Debtor retired to Florida and is no longer a practicing physician.

Prior to the Debtor's sale of the assets of the PC to Dr. Doman, the PC was staffed by six employees. After the sale, the same employees went to work for Dr. Doman. Upon reestablishing his practice under the PC in 1993, the Debtor rehired three of the employees and hired an office manager.

### BANDERAS ORTHOPEDIC CLINIC, P.C.'S DEFINED BENEFIT PLAN

During the existence of the PC, the Debtor established two pension plans. The first plan was the Banderas Orthopedic Clinic P.C.'s Defined Benefit Plan (Defined Benefit Plan), which was established in 1979. Since 1990, the Debtor has been the sole Trustee of the Defined Benefit Plan. The PC's employees along with the Debtor were participants in the Plan prior to 1991.

Between 1989 and 1994, the Debtor took five loans from the Defined Benefit Plan. While the loans were evidenced by promissory notes, there is a lack of evidence that any of the loans were fully repaid.

The Debtor also had the Defined Benefit Plan purchase two notes and mortgages which encumbered two houses built for

speculation by Archway Builders. The Debtor was the principal and sole stockholder of Archway Builders. Although the first note was paid off, the second one was never paid off.

At the time of the sale of the PC's assets to Dr. Doman, the Debtor terminated all six of his employees and distributed their partially "vested" interests in the Defined Benefit Plan in amounts calculated by the PC's actuarian, Jerry Cohen. In 1993, when the Debtor reestablished his medical practice using the PC, Dr. Banderas did not reestablish the Defined Benefit Plan for the employees because it was not economically feasible.

In 1993, the Internal Revenue Service conducted an audit of the Defined Benefit Plan for the year 1991 and determined that the Defined Benefit Plan had been involuntarily terminated and that the Debtor's former employees' interest should have been 100% vested in their accounts in 1991. Following the audit, the Debtor made supplemental distributions to his former employees totaling approximately $15,196.01 plus interest from the general account of his PC and reimbursed the PC with a distribution to the PC from the Defined Benefit Plan. Thereafter, in 1995, the IRS issued a favorable Letter of Determination for the Defined Benefit Plan based on requests made by Jerry Cohen on behalf of the Plans.

### BANDERAS ORTHOPEDIC CLINIC P.C.'S PROFIT SHARING PLAN

In July 1996, all of the assets of the Defined Benefit Plan were rolled over to the Banderas Orthopedic Clinic P.C.'s Profit Sharing Plan (Profit Sharing Plan). The Debtor was the sole Trustee and the sole participant in the Profit Sharing Plan and it is without dispute that the Debtor never contributed anything of value to the Profit Sharing Plan.

One of the assets of the Profit Sharing Plan, at least as of December 31, 1997, was a whole life insurance policy insuring Julio Banderas, as Trustee, issued by Connecticut General Life Insurance. The Debtor borrowed against the cash value of the policy, obtaining $10,000 in January 1998; $10,000 in February 1998; and $20,000 in March 1998, for a total of $50,000.

In 1996, the Debtor took distributions from the Profit Sharing Plan totaling $201,300.00, including the amounts of $63,074.11 on May 23, 1996; $27,000 on May 27, 1996; $50,000 on July 17, 1996; $10,000 on September 4, 1996; and two distributions of $10,000 each on November 11, 1996. Each distribution was deposited by the Debtor into a bank account held jointly with his spouse.

It should be noted at this time that the Adoption Agreement for the Profit Sharing Plan provides that immediate distributions may be made at the participant's election and loans may be made up to $50,000 or for one half of the vested interest of the participants.

On January 3, 1997, the Debtor established an Individual Retirement Account ("IRA") and transferred $794,713.12 from his Profit Sharing Plan to an IRA maintained with American Funds Service Company.

The Debtor filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on October 3, 1997. The Debtor's Schedules, as amended, reflect that the Debtor claims as exempt (1) the IRA, pursuant to Florida Statute § 222.21; and (2) the Profit Sharing Plan with an approximate scheduled value of $174,568, pursuant to 11 U.S.C. § 541(c)(2)(sic). On December 15, 1997, the Trustee filed her Objection to Debtor's Claim of Exemptions.

■ Considering first the Debtor's contention that the assets valued at $174,568.00 in the Profit Sharing Plan are exempt, pursuant to 11 U.S.C. § 541(c)(2), it is clear that the Debtor's reliance on Section 541 is misplaced. This Section has nothing to do with exemptions. To the

contrary, the Section provides that restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in bankruptcy. Prior to the decision of *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) self-settled pension plans were not excluded from the debtor's estate. *See In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *Matter of Goff*, 706 F.2d 574 (5th Cir.1983). Since the decision of the Supreme Court in *Patterson v. Shumate, Id.*, ERISA qualified plans, i.e. 401K profit sharing plans, and other qualified plans, are not property of the estate because such plans must have anti-alienation provisions, which is a requirement of the IRS Code for tax exempt qualification. It is evident from the foregoing that if the asset under consideration is within the provisions of Section 541(c)(2) because it is a qualified plan, the question of exemption does not even come into play because the asset is not property of the estate. This is so because a property which is not property of the estate cannot be claimed as exempt. It is simply not subject to administration by the Trustee.

■ This leaves for consideration the Debtor's exemption claim based on Florida Statute § 222.21(2)(a), which provides,

any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408 or s. 409 of the Internal Revenue code, as amended, is exempt from the claims of creditors of the participant or beneficiary.

Florida Statute § 222.21(2)(a) applies to individual retirement accounts and has not been preempted by ERISA § 514(a). *See In re Francisco*, 204 B.R. 799 (Bankr. M.D.Fla.1996); *In re Schlein*, 8 F.3d 745 (11th Cir.1993). By the Statute's express terms, a prerequisite to an allowable exemption under this Section is that the retirement plan be qualified for a tax exemption under Sections 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code.

■ The Trustee contends that the Defined Benefit Plan and the Profit Sharing Plan which was funded by the Defined Benefit Plan were not qualified plans under the Internal Revenue Code and that, therefore, the IRA, whose funding was derived from the Profit Sharing Plan, lost its exemption status granted by Florida Statute § 222.21. The burden is on the Trustee to establish that the plan is disqualified. *See In re Ehnle*, 124 B.R. 361 (Bankr.M.D.Fla.1991). The Debtor argues that the "qualification" issue is moot because the IRA is, itself, exempt and does not depend on the previous pension plan for its exempt status. The Debtor is correct that the IRA is exempt and the Trustee does not dispute that the IRA would be exempt but for additional facts.

■ An individual retirement account is not tax exempt under the Internal Revenue Code, however, even if it is otherwise qualified under the Internal Revenue Code, if the funds in the IRA were transferred from a non-qualified plan. *See Baetens v. C.I.R.*, 777 F.2d 1160, 1167 (6th Cir.1985).

■ It is without dispute that the Defined Benefit Plan was audited and approved as a qualified plan by the IRS after the participating employees received distributions of their vested interests. It is equally without dispute that all assets in the Profit Sharing Plan were the assets rolled over from the Defined Benefit Plan. Thus, if the Court stops right here the claim of exemption of the Debtor will have to be recognized. However, the difficulty with the Debtor's claim of exemption stems from the undisputed fact that the funds in the IRA account were the funds rolled over from the Debtor's Profit Sharing Plan. This fact leads to the ultimate question of whether the Profit Sharing Plan and the funds in the Plan lost their tax exemption granted by the Internal Revenue Code because the Plan did not

meet the requirements for qualification under the applicable Statute and Regulations.

As noted earlier, the effective date of the Profit Sharing Plan was July 1, 1996. Yet, the Debtor, the only participant of the Profit Sharing Plan, retired in January 1996 prior to the effective date of the Profit Sharing Plan. During the period between the creation of the Profit Sharing Plan in July 1, 1996 by the· PC and the date that the Profit Sharing Plan assets were distributed to the IRA, the PC never made any contributions to the Profit Sharing Plan.

 Section 401(a) of the Internal Revenue Code provides, in pertinent part,

(a) Requirements for qualification.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—...

The purpose of establishing requirements to qualify profit sharing plans for a tax exemption is to insure that profit sharing plans are operated for the welfare of employees in general. *See McClintock–Trunkey Co. v. C.I.R.*, 217 F.2d 329 (9th Cir. 1954). Clearly, the Profit Sharing Plan does not qualify for the tax exemption because the Plan was not formed by the PC for the exclusive benefit of the employees since there were no employees. At that time, the Debtor was not even employed by the PC at the time since he had retired months earlier.

Based on the foregoing, this Court finds that the assets of the IRA and the assets of the Profit Sharing Plan, if any, are property of the estate which are not exempt because the funds in the IRA and the assets in the Profit Sharing Plan are not qualified for a tax exemption under IRC § 401, and in turn, by Florida Statute § 222.21(2)(a). In making this ruling, the Court is not unmindful that in support of his position, the Debtor submitted supplemental authority claims to support the Debtor's argument that borrowing from a pension plan, even if the loan is imprudent, in and of itself does not disqualify the plan. However, the particular argument is irrelevant and misses the point because this Court's ruling is made without having to determine the propriety of the loans. The ruling is based solely on the fact that the Profit Sharing Plan first became effective at a time when the P.C. no longer had any employees.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection to Exemptions be, and the same is hereby sustained. The IRA and the Profit Sharing Plan are hereby determined to be non-exempt property of the estate subject to administration by the Trustee.