**In the Matter of TOPGALLANT LINES, INC., Debtor.**

**AMBASSADOR FACTORS, Division Fleet Factors Corporation, Plaintiff,**

v.

**FIRST AMERICAN BULK CARRIER CORPORATION, et. al., Defendants.**

**Bankruptcy No. 89–41996. Adversary No. 90–4072.**

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Aug. 30, 1996.

John M. Tatum, Savannah, GA, for plaintiff.

Kathleen Horne, Savannah, GA, for defendants.

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

### ORDER ON MOTIONS TO AMEND PRE–TRIAL

First American Bulk Carrier Corporation ("FABC") has asked this Court to reconsider and amend the Pre–Trial Order filed on August 12, 1996, to recognize its standing to pursue a Section 506(c) claim against Ambassador Factors' collateral consisting of freights of the final voyage of the M/V Delaware Bay. That Motion is denied. Although FABC correctly argues that the majority view supports its position, the matter has not been decided in this Circuit. I have carefully read the decisions on both sides of this issue and find the minority view better reasoned. *Compare In re McKeesport Steel Castings Company,* 799 F.2d 91, 94 (3rd Cir.1986) ("[t]he rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach") *with In re JKJ Chevrolet, Inc.,* 26 F.3d 481, 484 (4th Cir.1994).

The language of § 506(c) is clear and unambiguous. It grants only trustees the authority to seek recovery of post-petition costs and expenses from the collateral of a secured creditor (footnote omitted). Limiting § 506(c) standing to trustees in the context of Chapter 7 proceedings is also consistent with a fundamental purpose of the Bankruptcy Code—equitable distribution to similarly situated creditors.

I am cognizant of the practical argument adopted by *McKeesport* and its progeny that granting standing to a creditor is equitable in nature and is designed to prevent a windfall to the secured creditor. *See United States v. Boatmen's First National Bank of Kansas City,* 5 F.3d 1157 (8th Cir.1993). However, the Fourth Circuit Court of Appeals in *In re JKJ Chevrolet, Inc.,* 26 F.3d at 484, adequately addresses the question of which branch of government is empowered to correct this arguable inequity.

Allowing a claimant to proceed directly against a secured creditor would circumvent this distribution scheme, potentially causing an inequitable division of the estate. For example, if an estate has no unencumbered assets, an administrative claimant recovering directly from a secured creditor might receive full reimbursement while other administrative claimants, whose services were also necessary to the preservation of the estate, would receive nothing. An administrative claimant proceeding against a secured creditor in effect would be granted priority over the other claimants in its same class. *We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly* (emphasis added) (footnotes omitted).

*Id.; see also In re Dyac Corporation,* 164 B.R. 574, 579 (N.D.Ohio 1994) ("[i]t is not that they are without remedy because their remedy lies under § 503(b)(1) and the distribution provided under § 726. Their problem is that there is no money in the estate"); *Matter of Oakland Care Center Inc.,* 142 B.R. 791, 794 (E.D.Mich.1992) ("it is not up to this Court to restructure the Bankruptcy Code priorities or to rewrite legislation"); *Matter of Great Northern Forest Products, Inc.,* 135 B.R. 46, 69 (Bankr.W.D.Mich.1991) ("[i]f a party other than the trustee or debtor in possession shall have independent standing to surcharge pursuant to § 506(c), it must be by edict of Congress").

Finally, I am mindful of the fact that when faced with clear statutory, language the Supreme Court has not been inclined to follow a view it finds to be unsupported by the statutory language even where there are "isolated excerpts from the legislative history" that support a different view. *See Patterson v. Shumate,* 504 U.S. 753, 761, n. 4, 112 S.Ct. 2242, 2248, n. 4, 119 L.Ed.2d 519 (1992).

[1] In our view, the plain language of the Bankruptcy Code and ERISA is our determinant.... The text of § 541(c)(2) does not support petitioner's contention that "applicable nonbankruptcy law" is limited to state law. Plainly read, the provision encompasses any relevant nonbankruptcy law, including federal law such as

ERISA. We must enforce the statute according to its terms.

*Id.* at 757–59, 112 S.Ct. at 2247 (Blackmun, J.).

When the phrase "applicable nonbankruptcy law" is considered in isolation, the phenomenon that three Courts of Appeals could have thought it a synonym for "state law" is mystifying. When the phrase is considered together with the rest of the Bankruptcy Code (in which Congress chose to refer to state law as, logically enough, "state law"), the phenomenon calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting text, that it any longer makes sense to talk of "a government of laws, not of men."

*Id.* at 766, 112 S.Ct. at 2250–51 (Scalia, J., concurring); *see also In re Colortex Industries, Inc.,* 19 F.3d 1371, 1375 (11th Cir.1994) ("[r]ules of statutory construction dictate that the plain meaning is conclusive, 'except in the "rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intent of its drafters." ' ") (*quoting United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).)

FABC also contends that this Court's January 10, 1990, Order in related adversary proceedings demands a different result. That Order stated in relevant part that Ambassador's receipt of freights was without prejudice to "any right to recovery from the Funds of administrative expense claims properly chargeable thereto." *Ambassador Factors v. First American Bulk Carrier Corp. (Matter of Topgallant Lines, Inc.),* Case No. 89–41996, Adv. Proc. 89–4125, Doc. No. 14, slip op., p. 5 (Bankr.S.D.Ga., Jan. 10, 1990 ) (Davis, J.). FABC argues that this language contemplates its Section 506(c) claim. By use of the term "administrative expense" I hold that the order contemplated only a Section 503(b)(1) claim, particularly in light of the fact that upon FABC's earlier motion to amend the Temporary Restraining Order, and after a hearing, this Court *deleted* from a proposed order the following language which more clearly contemplated a Section 506(c) claim:

... (2) any claim against or lien in the Funds that FABC holds by virtue of expenses incurred by it in the operation of the Debtor's container service, including expenses incurred in the carrying, delivering, and discharging of cargoes, which expenses include crew, discharge, and port expenses,

*Ambassador Factors v. First American Bulk Carrier Corp. (Matter of Topgallant Lines, Inc.),* Case No. 89–41996, Adv. Proc. 89–4125, Doc. No. 9, slip op. (Bankr.S.D.Ga., Dec. 29, 1989) (Davis, J.). Thereafter when the January 10, 1990, preliminary injunction was entered, this deleted language was again omitted. From this sequence of events I cannot conclude that Ambassador ever conceded that FABC would be permitted to assert a Section 506(c) claim or that this Court ever held that it would.

In the alternative, assuming arguendo that the right to bring a 506(c) action may accrue to creditors, I hold that FABC failed to timely assert a compulsory counterclaim to recover these expenses pursuant to 11 U.S.C. Section 506(c) and, therefore, is now barred from asserting its claim by Rule 13 F.R.Civ.P. made applicable to bankruptcy by Rule 7013 F.R.Bankr.P. In pertinent part, Rule 13 states:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

In general, if the counterclaim is found to have arisen out of the same transaction or occurrence and is not plead in accordance with the rules of procedure, it is barred. *See, Sanders v. First National Bank in Great Bend, et al.,* 114 B.R. 507, 512 (M.D.Tenn.1990). The Eleventh Circuit Court of Appeals has adopted the "logical relationship" test for determining whether a counterclaim is compulsory. *See Republic Health Corporation v. Lifemark Hospitals of Florida, Inc.,* 755 F.2d 1453, 1455 (11th Cir. 1985); *United States v. Aronson,* 617 F.2d 119, 121 (5th Cir.1980). A logical relation-

ship exists if "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979). Ambassador's complaint in this case sought a determination of the extent, validity, and priority of its lien on the Debtor's freights. It specifically prayed for a "judgment that Plaintiffs security interest in all of Topgallant's accounts is valid and perfected and has priority over all other claims and interests to the full extent of the secured indebtedness including interest and all fees, cost and other charges provided for in 11 U.S.C. § 506(b)". *Ambassador Factors v. First American Bulk Carrier Corp. (Matter of Topgallant Lines, Inc.)*, Case No. 89–41996, Adv. Proc. 90–4072, Doc. No. 1, (Bankr.S.D.Ga., filed April 27, 1990). The Plaintiffs complaint sought a comprehensive ruling as to the relative priority of interests in Debtors freights held by all parties. FABC's 506(c) claim which seeks a direct surcharge or "carve out" of funds otherwise pledged to Ambassador clearly bears a "logical relationship" to the complaint inasmuch as it involves the same subject matter (the freights) and many of the same factual and legal issues. It is, therefore, a compulsory counterclaim which is now time barred.

▮ In its pre-trial stipulation, FABC implicitly asserts that its filing of a 506(c) proof of claim in the underlying bankruptcy of the Debtor is tantamount to pleading its claim in the adversary. I disagree. First, the filing of that claim afforded no actual notice to Ambassador. Second, FABC filed its 506(c) proof of claim in the underlying case on April 23, 1990, seven days *prior* to the initiation of this adversary proceeding. Finally, on May 29, 1990, FABC not only answered Ambassador's complaint, but also filed a counterclaim that attempted to equitably subordinate Ambassador's claim. However, FABC omitted any reference of a 506(c) claim to surcharge Ambassador's collateral. In fact, to this point in time, FABC never has attempted to amend its pleadings in order to assert this claim. As far as this Court can ascertain, the first written document submitted by FABC that mentioned a 506(c) claim was FABC's pre-trial order filed February 9, 1996, almost six years after the filing of the adversary. Therefore, in accordance with the federal rules of civil procedure, I hold that FABC did not plead a compulsory counterclaim in a timely manner. Now on the eve of trial, with discovery complete, it is barred from doing so.

▮ This Court is aware that in bankruptcy proceedings, Rule 7013 limits the applicability of compulsory counterclaims by parties sued by the Trustee to claims that arise post-petition. However, this limitation is not applicable to FABC's claim because (1) this is not a suit by the Trustee; and (2) FABC terminated Debtor's charter pre-petition and Debtor filed for bankruptcy within hours thereafter effectively insuring that any 506(c) claim would accrue post-petition.[1] Rule 7013(f) states that "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, the pleader may, by leave of court, set up the counterclaim by amendment." Even, if I construe FABC's pre-trial order to constitute as a request to leave to amend, I decline to grant leave to amend the pleadings. FABC has been aware of this claim since before April 23, 1990. Six years of complex litigation have ensued and FABC has not shown oversight, inadvertence, or excusable neglect in failing earlier to amend this claim. Now after extended periods of appeals and discovery, I also hold that to permit amending the pleadings on the eve of trial is not required by justice. Thus, FABC's motion for reconsideration is denied.

FABC also asks clarification of MEBA's posture in this case. Its Section 506(c) claim is precluded on the same grounds as is FABC's. However, if, as alleged, MEBA holds a maritime lien superior to Ambassa-

---

1. "On December 13, 1989, FABC declared Debtor to be in default under the Subbareboat Charters by which Debtor had possession of the M/N CHESAPEAKE BAY and the M/N DELAWARE BAY. FABC took possession of both vessels and withdrew them from service. After FABC took possession of the vessels, Debtor filed its Chapter 11 petition on December 13, 1989." *FABC's Memorandum of Law*, Doc. No. 365, March 1, 1996.

dor's UCC interest it will be treated, upon final distribution by the Trustee in accordance with this Court's prior holdings, as they relate to the relative priority of Ambassador vis-a-vis maritime lienholders.

Ambassador seeks clarification that two of the four parties dismissed as parties defendant were not parties to the case. Their inclusion in the order was in response to the letter dated July 19, 1996, of Marvin Fentress which referred to the four maritime lien claimants "we [Ambassador's firm by merger] feel we can no longer represent." It does appear that Kurtz–Moran Shipping Agencies, Inc., is not a Defendant in this case and the Pre–Trial Order is amended to delete reference to it. Ambassador's math is also correct. The proceeds of non-military cargo are, *prima facie*, $912,866.00.