**In the Matter of Charles L. GORDON, Debtor.**

**Bankruptcy No. 96–41919.**

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Nov. 25, 1997.

Brian Kaufman, Tax Division, U.S. Department of Justice, Washington, DC, for Debtor.

R. Wade Gastin, Savannah, GA, for Respondent/Defendant.

### MEMORANDUM AND ORDER ON MOTION BY UNITED STATES FOR RECONSIDERATION OF CONFIRMATION OF CHAPTER 13 PLAN

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

The United States of America filed a Motion on April 23, 1997, asking this Court to reconsider confirmation of the Debtor's Chapter 13 plan; argument was heard by the Court on August 29, 1997. For the reasons stated herein I grant the Motion to Reconsider in order to articulate the basis for this Court's decision to confirm the plan, to delineate the parties' future rights and obligations, and to reaffirm the previous order of confirmation.

### FINDINGS OF FACT

Debtor's case was filed on August 6, 1996. A modification to Debtor's plan was filed on December 13, 1996, which provided in relevant part:

Debtor will pay IRS directly pursuant to 11 U.S.C. § 1322(a)(2) [sic], in that the creditor has agreed to be treated as a long term obligation and to be paid at the rate of $110.00 per month, which is substantially less than the payment would be under the Chapter 13 plan. Also, negotiations have been initiated to consummate an offer and compromise.

On February 21, 1997, the United States filed an objection to confirmation of the Debtor's plan. The objection alleged that the United States had a secured tax claim of $36,405.00, a priority tax claim of $1,661.66, and a general unsecured claim of $48,571.11.[1] The amount and priority of each of those claims is not in dispute. The United States argued in its objection and at the hearing that the plan was defective in not providing "for adequate treatment for the Service's secured tax claim as required by Bankruptcy Code Section 1325(a)(5)."

A confirmation hearing was held on April 17, 1997, and it was revealed that Debtor had executed an installment agreement with the Internal Revenue Service. The agreement referenced numerous tax periods but did not delineate a specific amount owed or the priority of the claims. The agreement provided in relevant part as follows:

I/We agree that the federal taxes shown above, PLUS ALL PENALTIES AND INTEREST PROVIDED BY LAW, will be paid as follows: $110.00 will be paid on 9–15–94 and $110.00 will be paid no later than the 15th of each month thereafter until the total liability is paid in full. I/we also agree that the above installment payment will be increased or decreased as follows:

---

1. The IRS' Objection to Confirmation lists the amount as $48,538.84 in the text of the objection and $48,571.11 in Exhibit B attached to the objection. The claim as filed is $48,571.11 and is deemed allowed as filed.

There was no further provision for increasing or decreasing the monthly payments. Elsewhere, however, the agreement provided as follows:

- This agreement is based on your current financial condition. We may change or cancel it if our information shows that your ability to pay has changed significantly.
- We may cancel this agreement if you don't give us updated financial information when we ask for it.
- While this agreement is in effect, you must file all federal tax returns and pay any taxes you owe on time.
- If you don't meet the conditions of this agreement, we will cancel it, and may collect the entire amount you owe by levy on your income, bank accounts or other assets, or by seizing your property.

Exhibit D–3. Over the objection of the IRS, I concluded on April 17 that the plan could be confirmed because although the total amount of the tax obligation was not contained within the four corners of the document, it was clear that the Debtor owed substantially more money than could be paid at a rate of $110.00 per month within a five year period. I thus held that the agreement came within the provisions of Section 1322(b)(5), which provides that a debtor may cure arrearages and maintain payments on any unsecured or secured claim where the final maturity date is later than the final payment under the plan. I ruled, however, that Section 1322(a)(2) required the priority claim to be funded within the five year period. Accordingly, the Trustee prepared an exhibit to the Order of Confirmation which showed that claims 5 and 6, the secured and unsecured claims of the Internal Revenue Service, would be paid direct and that claim 9, the priority claim, would be fully funded by disbursements from the Chapter 13 Trustee.

## CONCLUSIONS OF LAW

The United States' Motion for Reconsideration asks the Court to conclude that the secured claim of the Service can only be paid, under 11 U.S.C. § 1325(a)(5), in full, over five years, with interest. The Service contends that this is not the type of obligation Congress intended when it codified Section 1322(b)(5), in that that provision is intended primarily, if not exclusively, for the curing of defaults and maintenance of payments on residential real estate loans. The United States further asserts that the provision permitting the Debtor to maintain payments of $110.00 per month for five years, which would not fully amortize the secured claim of the Service within five years, violates the provisions of Section 1325(a)(5).

▮▮▮▮ As to the first contention, while it is clear that Section 1322(b)(5) is most frequently applied in situations where debtors are in default on monthly mortgage payment obligations, and permits them to cure the arrearage, maintain future payments, and save their homeplace from foreclosure, the language of 1322(b)(5) is broader. It permits cure and maintenance on *"any* unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5) (emphasis supplied). Because the plain meaning of this statute encompasses not only mortgage loans but also obligations such as the one before me, I reject the United States' first contention. Where Congress' intent is unmistakably evident from plain language, no further inquiry need be made into the scope of the statute. *Ambassador Factors, Inc. v. F.A.B.C.,* 208 B.R. 584, 586–587 (Bankr.S.D.Ga.1996) (Davis, J.). This is true even where "isolated excerpts from the legislative history" support another view. *Patterson v. Shumate,* 504 U.S. 753, 761, 112 S.Ct. 2242, 2248 n. 4, 119 L.Ed.2d 519 (1992).

When the phrase "applicable nonbankruptcy law" is considered in isolation, the phenomenon that three Courts of Appeals could have thought it a synonym for "state law" is mystifying. When the phrase is considered together with the rest of the Bankruptcy Code (in which Congress chose to refer to state law as, logically, enough, "state law"), the phenomenon calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting text, that it any

longer makes sense to talk of a "government of laws, not of men."

*Id.* at 766, 112 S.Ct. at 2250-51 (Scalia, J. concurring).

 I reject the second contention for two reasons. First, to interpret § 1325(a)(5) in the manner urged by the United States would eviscerate entirely the provisions of § 1322(b)(5). It is an elementary rule of statutory construction that a statute is to be construed so that all the parts of the statute are harmonized with one another. A construction in which one section eviscerates or contradicts another is not to be favored. *See Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) (it is an "elementary canon of construction that a statute should not be interpreted so as to render one part inoperative."), *overruled on other grounds, Webster v. Reproductive Health Services,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989); *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985).

 Moreover, I find that the plan complies with Section 1325(a)(5). It requires that a plan, in order to be confirmed, must (1) be accepted by the holder of the plan (which did not occur in this case) or (2) permit the creditor to retain the lien (which this plan provides) and distribute property to the secured creditor of a value which is not less than the allowed amount of the claim. 11 U.S.C. § 1325(a)(5). Debtor's plan accomplishes this. Clearly it does not distribute value *in cash* to the holder of the claim. It does distribute periodic payments to maintain debt service on this obligation to the Internal Revenue Service for the life of the plan. The remaining balance owed the United States is excepted from discharge pursuant to 11 U.S.C. § 1328(a)(1).[2] The total value distributed to the Service, therefore, is the cash reduction in the principal balance which was owed on the date of filing and a nondischargeable unpaid balance. Combin-

ing these two value components meets the requirements of § 1325(a)(5). Although I recognize how awkward the terminology makes this analysis, Congress must have intended it to be so; otherwise Section 1322(b)(5) cannot be harmonized with Section 1325(a)(5). *See In re Alexander,* Ch. 13 No. 97-20394, slip op. at 8 n. 6 (Bankr.S.D.Ga. Nov. 20, 1997) (Davis, J.) (Payment of long term debts under § 1322(b)(5) is "specifically sanctioned by the Code.").

The plan as confirmed provides for direct payments of the Internal Revenue Service obligation. Contrary to the contentions of the Internal Revenue Service, it does not limit the payment to a fixed $110.00 per month for the five year term of the plan. Rather, what is to be paid direct is the obligation encompassed within the four corners of Exhibit D-3, introduced at the hearing on April 17. That agreement contemplates that Debtors, for now, are paying $110.00 per month, but (1) that the amount can be increased or decreased; (2) that it is contingent on Debtors' current financial condition and if their ability to pay changes, the agreement may be changed or canceled; and (3) the agreement may be canceled if the Debtor fails to file all federal income tax returns timely and pay any taxes that he owes, if he fails to maintain updated financial information or if they "don't meet the conditions of this agreement," including timely monthly payments of $110.00.

The right of the Internal Revenue Service to enforce those terms is stayed by the provisions of 11 U.S.C. Section 362, but the Service has the right to file a motion seeking relief from the automatic stay if the Debtor defaults and the Debtor has the right to defend the motion. At the hearing on stay relief, the Court may modify the terms of the agreement, may provide the Debtor additional opportunities to cure any default, or may simply leave the IRS to its non-bankruptcy

**2.** 11 U.S.C. § 1328(a)(1) provides:
As soon as practicable after completion by the debtor of all payments under the plan unless the court approves a written waiver of discharge executed by the debtor after the order

for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt provided for by section 1322(b)(5) of this title.

remedies. 11 U.S.C. § 362(d); 11 U.S.C. § 105(a).

### ORDER

For the foregoing reasons the Order of Confirmation of April 17, 1997, as clarified herein, remains in full force and effect and the Motion to further reconsider is denied.