In re Carlos H. SILVA and Bernadette L. Silva, Debtors.

**Bankruptcy No. BK–S–98–28035–RCJ.**

United States Bankruptcy Court, D. Nevada.

March 29, 2000.

Jack Fidelman, Las Vegas, NV, trustee.

Carlos H. Silva, Boulder City, NV, Pro se.

Bernadette L. Silva, Las Vegas, NV, Pro se.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Bankruptcy Judge.

Debtor, Carlos H. Silva's Motion for Abandonment came on for hearing in the above entitled court on January 5, 1999 at 2:30p.m. Debtor and Trustee, Jack Fidelman, appeared personally.

The Court, having read and considered the Motion for Abandonment and finding that the notice given of the hearing on the Motion was adequate, and good cause appearing therefore, **IT IS HEREBY ORDERED** that the Motion for Abandonment is **DENIED.**

## FACTS

The Debtors, Carlos and Bernadette Silva, filed a Chapter 7 petition on September 9, 1998. The Debtor filed this Motion for Abandonment to set aside the Trustee's Motion to Claim money held by the Carpenters Union Trust Fund. The Debtor contends that the money in a "forced savings account," allegedly mislabeled as a "vacation fund", and due as of September 9, 1998, is not property of the estate under 11 U.S.C. § 541.

## ISSUE

1. Whether a "forced savings account," allegedly mislabeled as a "vacation fund," is excluded from being property of the estate under § 541(c)(2).

## DISCUSSION

■ Under the pertinent language of § 541(a)(1) of the Bankruptcy Code, the filing by the Debtor of a bankruptcy case created an estate comprised of, with certain exceptions, "all legal and equitable interests of the debtor in property as of the commencement of the case." One of the exceptions is contained in § 541(c)(2), which excludes from the estate property that is subject to a restriction "enforceable under applicable nonbankruptcy law" on the transfer of a debtor's beneficial interest in a trust. The Supreme Court in *Patterson v. Shumate*, 504 U.S. 753, 756–60, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992), held that the term "enforceable nonbankruptcy law" referred not merely to state law but to "any relevant nonbankruptcy law including federal law such as

ERISA [Employee Retirement Income Security Act]."

The Debtor prays that the "Vacation Fund" be excluded from the estate because it is really a "forced savings account." On the other hand, the Trustee contends that regardless of the labels used, the funds would not be excluded under § 541(c)(2) and thus remain property of the estate pursuant to § 541(a). This court will consider the possibility of exclusion based on the restrictions on alienation enforceable under ERISA. In other words, the possibility of exclusion under "applicable nonbankruptcy law".

Until recently, there has been a split among courts on the issue of whether a debtor's "ERISA-qualified" employee benefit plan could be excluded from the bankruptcy estate pursuant to § 541(c)(2).[1] For the purposes of ERISA, an "employee benefit plan" is defined as "an employee welfare benefit plan[2] or an employee pension benefit plan[3] or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).

In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court addressed the question of whether an anti-alienation provision in an "ERISA-qualified" plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for purposes of § 541(c)(2). The Court held unanimously that an anti-alienation provision in an "ERISA-qualified" plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for the purposes of § 541(c)(2). *Id.* at 756–57,

---

1. *See Patterson v. Shumate*, 504 U.S. 753, 757 n. 1, 112 S.Ct. 2242, 2246 n. 1, 119 L.Ed.2d 519 (citing split authority).

2. An "employee welfare benefit plan" is generally defined as "any plan, fund, or program...maintained by an employer or by an employee organization...for the purpose of providing for its participants or their beneficiaries, through the purchase or insurance or otherwise, vacation benefits." 29 U.S.C. § 1002(1)(A).

3. An "employee pension benefit plan" is generally defined as "any plan, fund or program...maintained by an employer or by an employee organization...that...provides retirement income to employees or results in a deferral of income by employees for periods extending to the termination of employment or beyond." 29 U.S.C. § 1002(2)(A).

112 S.Ct. at 2246. In reaching its holding, the Supreme Court determined that the plan's anti-alienation provision satisfied the literal terms of § 541(c)(2) because the ERISA provisions contained in 29 U.S.C. § 1056(d)(1) clearly impose a restriction on the transfer of a debtor's beneficial interest in a trust. *Id.* at 758–60, 112 S.Ct. at 2247. The Supreme Court determined that such a restriction was enforceable under "applicable nonbankruptcy law" because ERISA compels the trustee or fiduciary of the pension plan to act in accordance with the plan's directives, and creates its own enforcement procedures whereby civil actions could be commenced to enforce the ERISA provisions. *Id.* The Supreme Court also declared that its holding ensured that benefits would receive consistent treatment under ERISA, irrespective of whether the beneficiary filed for bankruptcy. *Id.* at 764–65, 112 S.Ct. at 2250.

Although the *Shumate* decision concluded that ERISA was included in "applicable nonbankruptcy law" pursuant to § 541(c)(2), the Supreme Court left undecided which types of employee benefit plans constituted "ERISA qualified" plans. Consequently, several decisions have attempted to determine what the Supreme Court intended by the term "ERISA-qualified." *See, e.g., In re Orkin,* 170 B.R. 751, 753 (Bankr.D.Mass.1994) (holding an ERISA qualified plan must comply with the requirements of ERISA and Internal Revenue Code); *In re Hall,* 151 B.R. 412, 419 (Bankr.W.D.Mich.1993) (outlining a three prong test used to identify "ERISA-qualified" plans).

■ To be an "ERISA-qualified" plan, ERISA provides, in pertinent part, that "[e]ach *pension* plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d) (emphasis added). However, § 1051 provides that an employee *welfare benefit* plan is not covered by that part of ERISA containing § 1056(d). Therefore, welfare benefit plans, such as the Vacation Trust here, are not required to contain restrictions on alienation.

The Supreme Court in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), considered the importance of ERISA's failure to require that "employee welfare benefit plans," as opposed to certain "pension plans" contain anti-alienation provisions. The Court noted that "when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits," but chose not to impose that limitation with respect to welfare benefit plans. The Court viewed the omission as "significant," concluding that when Congress intended in ERISA to extend anti-alienation protection to "a particular type" of ERISA plan, it did so expressly in the statute. *Id.* at 836–37, 108 S.Ct. at 2188–89. *See also Retirement Fund Trust of Plumbing, Heating and Piping Industry of Southern California v. Franchise Tax Bd.,* 909 F.2d 1266, 1280 (9th Cir.1990) ("anti-alienation provisions in the documents of a welfare trust cannot create a protection for the trust that Congress did not intend.").

Applying the *Mackey* analysis of the effect of § 1051 to the case at bar, this court finds that the Vacation Trust's nonstatutory anti-alienation provisions are not enforceable under ERISA. Because those provisions are not "enforceable" under the "nonbankruptcy law" of ERISA, that portion of the Vacation Trust payable as of September 9, 1998 is not excluded from the bankrupt estate by reason of § 541(c)(2) of the Bankruptcy Code.

Similarly, if the Debtor were to exercise all his rights under the Vacation Trust, those funds placed in the Debtor's account would not be excluded from the bankrupt estate because the Debtor's rights in monies placed in his account accrue upon deposit. For example, in accordance with Vacation Trust Rule 4, the Debtor is able to make one "Emergency Withdrawal" of all funds accumulated the prior May 1 through October 31 or November 1

through April 30. Normally, pursuant to Vacation Trust Rule 1, such funds would be disbursed six months after the accrual period. That is, funds deposited between May 1 and October 31 would be disbursed the following year on May 1 and funds deposited between November 1 and April 30 would be disbursed the November 1 of that year. In addition, Vacation Trust Rule 5 permits the Debtor to make monthly withdrawals from the Vacation Trust, upon application, in an amount not exceeding twelve cents per hour of employment in a month. The Debtor thus has access to his account funds held in the Vacation Trust and payable as of September 9, 1998. Such funds cannot be excluded from the bankrupt estate.

## CONCLUSION

Pursuant to the aforementioned reasons, the Court orders the Debtor's Motion for Abandonment **DENIED**.